**Henry Z. SPELL, Plaintiff,**

v.

**Charles D. McDANIEL, Ind. & as patrolman, City of Fayetteville Police Department; William P. Dalton, Command Sergeant, City of Fayetteville Police Department; Roger T. Holman, Command Sergeant, City of Fayetteville Police Department, William C. Johnson, Director of Internal Affairs Division, City of Fayetteville Police Department; Daniel K. Dixon, Chief, City of Fayetteville Police Department; John P. Smith, City Manager, City of Fayetteville; and the City of Fayetteville, N.C., a municipal corporation, Defendants.**

No. 84–06–CIV–3.

United States District Court,
E.D. North Carolina,
Fayetteville Division.

July 10, 1985.

Gerald Beaver, Fayetteville, N.C., for plaintiff.

Robert C. Cogswell, Jr., Fayetteville, N.C., for Homan, Dalton, Johnson, Smith & City of Fayetteville.

Bobby G. Deaver, Fayetteville, N.C., for C. McDaniel.

Carl A. Barrington, Jr., Fayetteville, N.C., for D. Dixon.

## ORDER

JAMES C. FOX, District Judge.

This matter is before the Court on plaintiff's application for an award of reasonable attorney's fees as the prevailing party under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988.[1] Plaintiff's counsel have filed extensive affidavits requesting compensation for a total of 2,087.60 hours of time, worth, in their estimation, $240,350.00. This lodestar figure, they propose, should then be increased by a discretionary multiplier in recognition of what they contend to be the extraordinary risks associated with the contingent nature of this case and the superior performance of counsel as well as the exceptional result. In addition, plaintiff seeks costs totalling $19,741.90. For the reasons that follow, a substantial fee is clearly mandated and, under the circumstances of this litigation, a significant multiplier is warranted.

Defendants, in their opposition to plaintiff's request, challenge 932.8 of counsel's hours on a variety of broad-based as well as line-item grounds. These objections, well over two hundred (200) in number, can somewhat be categorized into the following arguments:

1. a portion of the fee petition seeks compensation for time and effort spent on unsuccessful claims and motions;

2. plaintiff's documentation is inadequate or inaccurate;

3. the use of multiple counsel resulted in a substantial and unnecessary duplication of effort;

4. a number of hours claimed were excessive, unwarranted and unreasonable;

5. attorneys were unreasonably used to perform paralegal and clerical tasks;

6. most of the costs requested are not properly recoverable; and

7. a multiplier is not justified. Each argument will be addressed in detail in this opinion. However, at the outset, the Court feels it imperative to set forth the principles which it finds must govern its fee petition analysis.

## I. BASIC PRINCIPLES OF FEE PETITION ANALYSIS

In resolving the issues raised by plaintiff's application and defendants' objections thereto, the Court is caught between several competing concerns. The Court must, of course, be supplied with sufficient information from which it can determine a reasonable and equitable fee. Counsel for plaintiff clearly bear the burden of documenting and submitting evidence to support their claim of hours and costs expended in the litigation, as well as hourly rates and enhancement requested. *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Although fee applications come in all shapes and sizes, there is a definite minimum of documentation re-

---

**1.** 42 U.S.C. § 1988 provides in pertinent part:
... In any action or proceeding to enforce a provision of Sections 1981, 1982, 1983, 1985 and 1986 of this title, title IX of Public Law 92–318, or Title VI of the Civil Rights Act of 1964, the Court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

quired to substantiate counsel's claims before the court can act on the application. It is not the Court's goal to describe that minimum at this point in the opinion—that comes later—only to establish the existence of the requirement and its purpose, which is to provide the defendants with the opportunity to meaningfully scrutinize the reasonableness of the award requested and to present any legitimate objections. *National Association of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1324 (D.C.Cir.1982).

By the same token, the party opposing the application must submit specific and detailed objections. Just as the fee applicant cannot submit a conclusory application, an opposing party does not meet its burden by simply asserting broad challenges to the petition. *Id.* at 1338 (Tamm, J., concurring). Evidence must be submitted in support of any assault on the application and the more extensive the attack, the more evidence required.

The problem district courts now face, as in the case *sub judice*, is how to avoid allowing fee applications to assume massive proportions, thereby dwarfing the underlying litigation on the merits. *Laffey v. Northwest Airlines, Inc.*, 572 F.Supp. 354, 389 (D.D.C.1983), *reversed in part,* 746 F.2d 4 (D.C.Cir.1984). *See also Copeland v. Marshall*, 641 F.2d 880, 896 (D.C.Cir. 1980) (en banc). The Supreme Court has admonished the lower courts that "request[s] for attorney's fees should not result in a second major litigation," *Hensley v. Eckerhart*, 103 S.Ct. at 1941, yet this Court finds it almost impossible to "avoid becoming ensnared in the minute details of the professional relationship under scrutiny [while at the same time insisting] upon specific documentation for every component of the fee award." *Laffey*, 572 F.Supp. at 389. The Supreme Court's admonishment is extremely difficult to effectuate given that Court and the Courts of Appeals' increasing insistence upon detailed supporting documentation by the

parties and findings by the district court— "ironically, in conjunction with judgments that are conceded to be uniquely within the capacity of the trial court and that are theoretically committed to its discretion. . . ." *Id.* *See also Laffey*, 746 F.2d at 31 and 39 (Wright, J., dissenting).

In resolving this conflict between requiring detail and exercising well-informed discretion, this Court, where it is necessary in this opinion, chooses the latter. The Court has been involved continually with this action since its filing in January of 1984, having witnessed or reviewed the conduct of nearly the entire case. Numerous pre and post-trial hearings on motions were held by Magistrate Dixon, with whom the Court has been in constant communication throughout the litigation. In addition, at this Court's order, the Magistrate conducted extremely extensive and exhaustive pre-trial conferences and hearings. The Magistrate's pre-trial efforts not only assisted in providing the parties an equitable and expeditious trial, but also allowed the Court to gain a tremendous amount of knowledge about the complex evidentiary and factual issues in the case prior to the commencement of trial.

Furthermore, the court's resident law clerk in Fayetteville has maintained, by necessity, almost daily contact with the parties since December of 1984. The Court has taken the time to recite this background to establish the depth of the Court's involvement in this litigation and its knowledge of counsel who tried the case.

With this background in mind, the Court approaches plaintiff's fee petition and defendants' objections with the firm intention of not allowing its inquiry to assume "massive proportions" or "result in a second major litigation." In this regard, the Court has previously determined that an evidentiary hearing was unnecessary to resolve defendants' objections. Order of May 28, 1985.[2] Given the Court's intimate knowl-

---

2. Neither party has moved for an evidentiary hearing, thus waiving their right to the same. *Miles v. Sampson*, 675 F.2d 5, 9–10 (1st Cir. 1982); *Herrara v. Valentine*, 653 F.2d 1220, 1233

(8th Cir.1981). In addition, both sides have been given more than an adequate opportunity to submit affidavits and other evidence supporting their respective positions.

edge of this case, the depth of the briefing on plaintiff's fee petition, the detail of plaintiff's verified motion and affidavits,[3] the extensiveness of the written record, the submission for *in camera* review of counsel for plaintiff's contemporaneous and original time logs, this court's knowledge of the quality of plaintiff's counsels' performance throughout this litigation, and the fact that defendants have submitted little or no credible *evidence* in support of their objections, the Court is confident that the decisions rendered herein are well-founded. The result is an adequate fee award for plaintiff's counsel and one which does not unfairly or unjustly burden the defendants.

In exercising its discretion in certain areas and refusing to rule independently on each and every line-item objection tendered by defendants, the Court is not abdicating its function to fully explore the merits of plaintiff's fee petition; rather, it is simply performing its task in a manner it feels is economical for the judicial system, which has already devoted extraordinary amounts of time to this litigation, and procedurally fair to both parties.

Before the Court proceeds to address defendants' objections, a review of this litigation is in order as a preface to the discussions which follow:

## II. *BACKGROUND*

Plaintiff initiated this action pursuant to 42 U.S.C. § 1983 by complaint filed January 26, 1984. The complaint, as amended, alleged that on November 19, 1983, plaintiff was arrested by defendant McDaniel in Fayetteville, North Carolina, for driving while impaired and possession of a controlled substance. McDaniel transported Spell to the Law Enforcement Center (LEC) for breathalyzer testing and arrest procedures. Upon completion of the breathalyzer examination, Spell alleged that while handcuffed, he was removed to the Fayetteville Police Department (F.P.D.)

Assembly Room, whereupon McDaniel, without justification or provocation, assaulted Spell by striking him with his hands and by kneeing him in the testicles with such force that plaintiff suffered permanent loss of his right testicle. Spell contended he was rendered irreversibly sterile as a result of McDaniel's actions.

Plaintiff further alleged that McDaniel's actions were in furtherance of and under color of the official policy, practice, custom and procedure of the F.P.D. *See Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Plaintiff set forth a number of allegations against the supervisory defendants, Dalton, Holman, Johnson, Dixon and Smith, and the City to support the above contention, including:

1. Knowledge of defendants, prior to the November 19, 1983, incident, of repeated claims and instances of police abuse and assaultive conduct toward detainees and arrestees;

2. Prior knowledge of similar allegations of abuse against McDaniel;

3. Establishment and enforcement of a quota system for arrests and citations, thereby condoning unlawful and abusive arrests and detentions;

4. Refusal to competently investigate allegations of abuse and assault filed against members of the F.P.D.;

5. Cover-up of acts of misconduct and abuse by police officers;

6. Failure to adequately train police officers in the use of reasonable force;

7. Failure to adequately supervise the actions of police officers; and

8. Rewarding officers who displayed overly aggressive and abusive behavior, while threatening and reprimanding those officers who reported acts of misconduct.

Plaintiff claimed these policies, practices, customs and procedures directly and proxi-

---

**3.** Although plaintiff's affidavits and evidence are not without some flaws, *see infra* n. 25 at 1087, the submissions basically comport with the requirements of *National Association of Concerned Veterans v. Secretary of Defense,* 675 F.2d 1319 (D.C.Cir.1982) and *Copeland v. Marshall,* 641 F.2d 880 (D.C.Cir.1980) (en banc), thereby providing the Court with more than an adequate basis upon which to rule on the merits of the fee application and defendants' objections.

mately resulted in defendant McDaniel's brutal assault upon Spell. Plaintiff predicated his action upon a deprivation of his constitutional rights substantively secured by the Fourth, Eighth and Fourteenth Amendments. Specifically, Spell asserted that defendants' tortious conduct rose to constitutional significance, and was therefore cognizable under § 1983, on four independent substantive grounds, including (1) the right of physical integrity, to be free from unlawful detention and to be properly cared for and treated as secured by the substantive due process provisions of the Fourteenth Amendment and (2) the right to be secure against unreasonable seizures as secured by the Fourth Amendment.[4]

Defendants answered, denying all substantive allegations and advanced omnibus motions early in the litigation. In March of 1984, all defendants moved to dismiss, contending (1) lack of jurisdiction over the person; (2) lack of jurisdiction over the subject matter; (3) plaintiff's complaint was conclusory and lacked sufficient factual allegations; (4) plaintiff's allegations failed to state any cognizable claim for relief under § 1983; (5) plaintiff's claims amounted to mere tortious conduct for assault and battery; and (6) *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) barred the action. In addition, defendants raised a host of affirmative defenses including absolute immunity and good faith immunity. Finally, defendants Holman and Johnson moved at this same time for summary judgment and the City moved to strike plaintiff's claim for punitive damages.

Extensive and competent briefing accompanied these motions as well as a motion by plaintiff to compel discovery. With the exception of one minor item requested by plaintiff, defendants refused to voluntarily comply with any of Spell's request for discovery, thus necessitating plaintiff's motion.

This Court thoroughly reviewed the above delineated motions for four months before issuing a 73–page written memorandum opinion and order on July 11, 1984. All of defendants' motions were denied, except the motion of defendant City to dismiss plaintiff's prayer for punitive damages against the City, and plaintiff's motion to compel discovery was granted with an accompanying protective order.[5]

During the next few months, defendants complied with the Court's order and over 14,000 internal documents were disclosed to the plaintiff. Plaintiff and defendants exchanged discovery with a maximum of effort and a minimum of further motions. The litigation was calendared for pre-trial and trial, while the Court began the process of scheduling final motions and the submission of pre-trial materials.

However, as trial drew nearer, disputes between counsel grew and a number of motions concerning discovery and witnesses were filed. The motions generally were briefed, with two of them requiring argument before Magistrate Dixon. Between November 1, 1984, and January 1, 1985, the Magistrate issued eight (8) orders, attempting to resolve all pending areas of contention.

One of the motions filed by plaintiff requested a protective order for plaintiff's police witnesses due to potential problems of intimidation. Although the Magistrate denied plaintiff's motion and found no evidence of intimidation, given the background and circumstances of this case, the Magistrate ordered the scheduled depositions of these witnesses to be held at the courthouse (1) so as to remove any perception or appearance of harassment or intimidation, whether real or imagined by the witnesses, and (2) to allow the Magistrate to timely rule on any objections by counsel or the witnesses at the deposition. Defendants appealed this order and the Court affirmed the Magistrate's ruling. Subse-

---

**4.** The other proposed basis of liability, under the Eighth Amendment and the Privileges and Immunities Clause of the Fourteenth Amendment, were dismissed by this Court on July 11, 1984.

**5.** In response to a motion from defendants, a partial protective order was issued strictly limiting inspection and access to the disclosed documents and requiring or allowing *in camera* review of three categories of documents.

quently, defendants cancelled the scheduled depositions.[6]

During this period of time, the Court became aware that this litigation would require an extraordinary pre-trial workup in order to ensure an equitable and expeditious trial. Accordingly, the Court directed the Magistrate to pre-try the case as extensively as the law would allow under F.R. Civ.P. 16.

On January 14, 1985, the pre-trial hearing commenced. It lasted three days with the third day consuming nearly eleven hours in court. Defendants filed, pre-hearing, motions to suppress and exclude much of plaintiff's proposed evidence, while plaintiff moved to exclude his prior convictions and a limited number of defendants' documents. With his staff working around the clock, a 55 page order was issued by the Magistrate on January 21, discussing all of the pending pretrial motions, plus a number of procedural questions raised by this Court. The Magistrate denied an overwhelming majority of defendants' motions and found frivolous a significant number of late objections interposed by defendants to plaintiff's proposed exhibits.[7] Defendants appealed the Magistrate's order and this Court affirmed the same with a few minor modifications.[8]

Trial in this action began on January 25, 1985. Counsel for plaintiff were Messrs. Beaver, Thompson and Richardson.[9] Counsel for defendants were Messrs. Barrington, Cogswell & Deaver. Plaintiff presented twenty-seven (27) witnesses at trial, all tending to prove either the assault in question or a pattern of misconduct within the F.P.D.[10] Included within the twenty-seven were seven (7) lay citizens of Fayetteville, eight (8) present and former police officers of the F.P.D., an assistant district attorney from Fayetteville, plaintiff's treating physician, his former attorney, an expert in police civil liability and the former police attorney, all of whom testified in support of plaintiff's allegations regarding (1) the assault on November 19, 1983, or (2) the existence of a *de facto* policy, practice and custom within the F.P.D. of brutality, cover-up and misconduct. In addition, plaintiff

---

**6.** The Court notes this motion because defendants contend they prevailed on the motion and, therefore, should not be assessed any of plaintiff's fees in prosecuting the matter. As discussed *infra* at 1082–1084, the Court disagrees with defendants' legal analysis of the issue and further recalls that the issue of intimidation was again raised by plaintiff's counsel at trial, this time resulting in an order forbidding members of the FPD from interrogating any police witness for the plaintiff during the course of the trial. It should be further noted, with reference to defendants' attack on plaintiff's claim for hours expended, that at the time of trial, defense counsel Barrington informed the Court that the sole reason police officials were questioning plaintiff's witnesses was because defense counsel simply did not have the *time* to conduct the interviews themselves.

**7.** As the Magistrate stated at the time,

It has become increasingly clear to this Court that defendants are objecting to any and all of plaintiff's exhibits and testimony. A vast number of defendants' objections to plaintiff's exhibits in the pre-trial order which were not previously raised, reasonably and foreseeably should have been raised by defendants at the pretrial conference.... To raise these objections, post-hearing, as defendants have done, is patently frivolous. (footnote omitted).

Order of January 21, 1985, at 1. A determination on the question of sanctions stemming from these objections remains pending.

**8.** It was at the pre-trial conference that defense counsel Larry McGlothlin withdrew from the case at the suggestion of the Magistrate. Mr. McGlothlin did so due to the possibility he might be called as a witness in this action. Given the fact that Mr. McGlothlin was police attorney at all times relevant and pertinent to the litigation and, further, that his name and notations appeared throughout the F.P.D. internal documents, Mr. McGlothlin's withdrawal while late, was certainly proper.

As Mr. McGlothlin's withdrawal was not predicated upon a conflict of loyalties to the parties, the court does not, upon reflection, find improper Mr. McGlothlin's continuing as a member of the litigation team outside of the courtroom and without the knowledge of the jury.

Mr. McGlothlin participated in the second trial, see n. 16 infra at 1079, a trial at which there was no possibility of his testifying.

**9.** Mr. Holt of Beaver, Thompson, Holt and Richardson, P.A. remained in the courtroom only for the selection of the jury—his area within counsel for plaintiff's division of responsibility.

**10.** Plaintiff's pre-trial witness list totalled fifty-four (54), thus plaintiff utilized 50% of his anticipated witnesses.

introduced hundreds of documents contained in two exhibit notebooks, many of the exhibits being internal F.P.D. documents obtained through discovery. These exhibits were properly offered by plaintiff to establish his major allegations of an unconstitutional quota system for arrest, failure to discipline officers, failure to investigate citizens' complaints, failure to supervise officers, cover-up of police misconduct and repeated acts of excessive force and brutality.

Defendants presented fourteen (14) witnesses, including three (3) of the defendants, two (2) present police officers and two (2) experts in the area of police civil liability, all offered to prove that the McDaniel assault never occurred, that plaintiff suffered his injury earlier in the day when he allegedly fell on a rock or log at a nearby riverbank, and that, in fact, no policy, practice, custom or procedure of misconduct existed within the F.P.D.[11] In addition, defendants, like plaintiff, introduced hundreds of documents to support their position, with a particular emphasis on the issue of the adequacy of training within the F.P.D.

The trial lasted eighteen (18) days. It was extremely hard-fought and emotional.[12] The tension level in the courtroom was continually high. Local and state press coverage was extensive. Both parties submitted detailed requests for jury instructions, including a number of cautionary instructions during trial.

Two issues of liability were submitted to the jury; first, whether defendant McDan-

iel assaulted the plaintiff by kneeing him in the testicles proximately causing plaintiff's injury and second, whether the assault by McDaniel proximately resulted from a *de facto* policy, custom or practice developed or maintained by the supervisory defendants, or of which they reasonably should have been aware, and as a result of which, the supervisory defendants' actions or omissions amounted to gross negligence or deliberate indifference to the constitutional rights of others. Two issues on damages were also submitted, one for compensatory damages and one for punitive damages.

The case went to the jury on Monday, February 18, 1985, and thirteen (13) working hours later, on Wednesday, February 20, 1985, the jury returned its verdict. The jury found defendants McDaniel, Dalton, Holman, Dixon, Johnson, and through these official supervisory defendants, the City of Fayetteville, liable for violating plaintiff's constitutional rights and assessed compensatory damages at one thousand dollars ($1,000). The jury assessed no punitive damages and also found in favor of defendant Smith—on liability.

As a result of the jury's verdict, the parties filed numerous post-trial motions, including defendants' motions for judgment notwithstanding the verdict and for a new trial, as well as plaintiff's motion for a new trial solely on the issue of compensatory damages. All issues were fully briefed and oral argument was heard in Wilmington on March 5, 1985.[13]

On March 12, 1985, the Court issued a memorandum opinion denying defendants'

---

**11.** Defendants' amended pre-trial witness list totalled 138, independent of plaintiff's list, thus defendants utilized approximately 10% of their anticipated witnesses. Defendants also listed as potential witnesses, "all witnesses listed by plaintiff" and when those additional witnesses are factored into the equation, defendants utilized approximately 7.5% of all of their listed witnesses. The Court notes this fact because plaintiff claims a number of hours expended close to trial attempting to contact some of defendants' listed witnesses. The result plaintiff contends was a needless amount of "lost" time spent by plaintiff's counsel due to defendants' decision to list witnesses that never were going to be called for trial. Mr. Beaver specifically states in his affidavit of March 1, 1985, that

plaintiff's counsel contacted fifteen (15) identified witnesses and were informed by these people that "at no time [had they] been contacted by anyone on behalf of the defendants." Affidavit at 9. Defendants did not respond to this argument in any of their fee petition pleadings.

**12.** *See e.g.,* testimony of Louis Radosevich, Charles Livingston, Gareth Lushis, Barry Fischer, James Ammons, Jr., Roy Matthews, Dr. George Kirkham, John Smith and Kenneth Wioskowski, as well as the closing arguments of all counsel.

**13.** During this same period of time, initial fee petition documents were submitted by plaintiff and objections filed by defendants.

motions and granting plaintiff's motion. The Court held that (1) the jury instructions as given were correct and in accordance with law; (2) evidence in support of the jury's verdict on liability was substantial; (3) the jury award was grossly inadequate and would shock the conscience of the Court were it allowed to stand; (4) the totality of the circumstances did not clearly and substantially point to a compromise verdict; and (5) a new trial on the issue of compensatory damages was mandated.

In this order, the Court made clear the new trial would be "solely and strictly limited to the narrow issue of how much money will fairly and adequately compensate plaintiff for his damages." Order at 26. The Court informed counsel that the second jury would be "instructed to accept as fact that defendant McDaniel kneed plaintiff in the testicles on November 19, 1983, proximately causing his injuries.." *Id.*

Again, the litigation was referred to Magistrate Dixon for a comprehensive pretrial conference and hearing, which was subsequently held in Wilmington on March 21, 1985. Prior to that hearing, the parties submitted pre-trial contentions and a proposed pre-trial order. Defendants contended that neither the Order of March 12, 1985, nor the jury verdict as to liability precluded them from presenting evidence to establish that: (1) any injury suffered by plaintiff to his right testicle occurred prior to his arrest on November 19, or after he was placed in jail; [14] (2) McDaniel's actions did not proximately cause the rupturing of plaintiff's testicle or his sterility; (3) plaintiff was not entitled to recover any compensatory damages from the defendants; (4) McDaniel never committed any act that caused any injury to plaintiff; and (5) even if McDaniel assaulted plaintiff, the force used was reasonable.[15] Plaintiff moved *in limine* to bar evidence at the second trial on the above contentions and for F.R.Civ.P. 11 sanctions for the interposing of frivolous defenses.

The Magistrate in his 34 page order of March 26, 1985, granted plaintiff's motion and scheduled a hearing on sanctions for a date after the second trial. The Magistrate further granted plaintiff's motion to exclude evidence of his prior convictions for the second trial. Defendants appealed Magistrate Dixon's order and on April 1, 1985, this Court affirmed the Magistrate's order with the exception of his ruling on plaintiff's prior convictions. The Court determined that, with proper restrictions placed on defendants' inquiry into plaintiff's convictions, said inquiry should be allowed because the probative value of the evidence, as those convictions related to plaintiff's credibility, was not substantially outweighed by the danger of unfair prejudice. F.R.Evid. 403.

The second trial commenced on April 2, 1985, in Wilmington.[16] Trial lasted less than two days with plaintiff presenting three witnesses, including two physicians, and introducing a number of documents, all tending to prove plaintiff's intense pain and suffering. Defendants presented two witnesses, including defendant McDaniel, attempting to establish the limited nature of plaintiff's pain, suffering and mental anguish.

The jury deliberated less than three hours and on April 4, 1985, returned a $900,000 verdict on the sole issue of compensatory damages. Judgment was entered accordingly by the Clerk of Court. Defendants immediately filed post-trial motions for judgment notwithstanding the verdict and for a new trial.[17] Both sides

---

**14.** Defendants admitted to the Magistrate at the hearing that they had no evidence to support this contention.

**15.** Defendants had abandoned this defense prior to the first trial and no evidence was ever presented or offered to support the defense since McDaniel had consistently denied that the incident occurred.

**16.** Defendants were represented at the second trial by Messrs. Barrington, Cogswell, Deaver and McGlothlin. *See* footnote 8, *supra.* Plaintiff was represented by Messrs. Beaver, Thompson and Richardson, although Mr. Richardson fell ill after the first day of trial and did not participate in the remainder of the trial.

**17.** During the course of this litigation, defendants have filed 21 substantive motions and plaintiff has filed 13; defendants have sub-

briefed the issues and upon a review of these submissions, defendants' motions were denied by order filed April 18, 1985, with the Court finding substantial evidence to support the verdict.

Subsequent to the April 4 verdict, Magistrate Dixon conducted a hearing on the issue raised by plaintiff of defendants' frivolous pre-trial contentions. The Magistrate found that most of defendants' contentions for the second trial were unjustified and unwarranted under any objective view of the facts and applicable law. Attorney's fees in the amount of $652.50 were awarded to plaintiff's counsel for time spent in pursuing their motion to exclude evidence on defendants' claims. Defendants appealed the Magistrate's order and this Court affirmed by opinion filed May 29, 1985.

Defendants have noted their appeal of the $900,000 Judgment to the Fourth Circuit Court of Appeals and a stay of any proceedings to enforce judgment has been granted pending appeal pursuant to F.R. Civ.P. 62(d). *See* Order of May 29, 1985.[18] Final fee petition supplements and objections have been filed and plaintiff's application is now ripe for disposition.[19] The Court will now proceed to consider *seriatim* defendants' objections and contentions heretofore summarized.

### III. THE CIVIL RIGHTS ATTORNEY'S FEES AWARD ACT OF 1976

The Civil Rights Attorney's Fees Awards Act (the Act) of 1976, 42 U.S.C. § 1988, provides in relevant part that:

> In any action or proceeding to enforce a provision of [Section 1983], the court, in its discretion, may allow the prevailing party... a reasonable attorney's fee as part of the costs.

The statute thus confers power on the courts to award attorney's fees as part of "costs" to parties who prevail in civil rights actions. The underlying concept behind the Act is a departure from the traditional American Rule, which requires that each party in a lawsuit ordinarily bear its own costs of litigation. Explicitly reacting to the Supreme Court's decision in *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1978), wherein the Court limited the private attorney general doctrine to situations in which Congress had expressly authorized an award of attorney's fees, Congress enacted the Act in 1976 to achieve consistency in the application of civil rights laws. S.Rep. No. 1011, 94th Cong., 2d Sess. 1, *reprinted in* 1976 U.S.Code Cong. & Ad.News, 5908, 5909.

The purpose of § 1988 is to ensure meaningful and effective access to the judicial system for persons with civil rights grievances so that they may act as private attorneys general and vigorously enforce the civil rights laws. *Hensley v. Eckerhart*, 103 S.Ct. at 1937. Accordingly, a prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Id.* quoting S.Rep. No. 1011 at 4, U.S.Code Cong. & Ad.News at 5912. The initial question in ruling on any petition for fees, therefore, is whether the fee applicant qualifies for a § 1988 award by meeting the "prevailing party" requirement.

#### A. *Plaintiff as the Prevailing Party*

▬ This issue is governed by the Supreme Court's decision in *Hensley v. Eckerhart, supra,* in which the appropriate test is set forth in the following language:

> A plaintiff must be a "prevailing party" to recover an attorney's fee under § 1988. The standard for making this threshold determination has been framed in various ways. A typical formulation

---

mitted 30 briefs or memoranda of law and plaintiff has filed 20; and this Court, in combination with Magistrate Dixon, has rendered 38 substantive orders and opinions. Not a stone has been left unturned by either party and the hours reasonably expended by both sides have been enormous.

**18.** Defendants have posted the required security in the amount of $1.2 million.

**19.** Remaining to be heard and decided are a number of collateral issues concerning allegations of misconduct by defense counsel at the first trial. *See* Sanctions Order filed May 29, 1985, at 8 fn. 8.

is that "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in the litigation which achieves some of the benefit the parties sought in bringing suit." *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (CA 1 1978). This is a generous formulation that brings the plaintiff only across the statutory threshold. It remains for the district court to determine what fee is "reasonable." 103 S.Ct. at 1939 (footnotes omitted). Thus, a plaintiff is a prevailing party if he or she succeeds on *"any* significant issue...which achieves *some* of the benefit the parties sought in bringing suit." *Id.* (emphasis added). It is not necessary that a plaintiff succeed on all the significant issues, or that the Court award all of the monetary, declaratory or injunctive relief sought in the complaint. *Fast v. School District of City of Ladue,* 728 F.2d 1030, 1033 (8th Cir.1984) (en banc).

■ The fact that plaintiff did not prevail on every theory espoused in his complaint against every defendant sued for every dollar requested does not preclude an award of fees in this action. Any argument to the contrary is without merit as plaintiff's $900,000 verdict against all defendants except Smith easily meets the *Hensley* standard.[20] In point of fact, plaintiff prevailed on nearly all the significant issues in this litigation. Accordingly, this Court finds that plaintiff is the "prevailing party" under 42 U.S.C. § 1988 and, as such, is entitled to an award of reasonable attorney's fees absent special circumstances prohibiting the same.

**20.** Defendants' primary contention in this regard came on the heels of the first jury's $1,000 verdict. Defendants argued that the minimum amount of damages awarded did not meet the *Hensley* requirement of achieving "some of the benefit" sought. This argument has, of course, been mooted by the $900,000 verdict. However, the Court notes that even if this case remained in the post-first jury verdict posture, plaintiff still would have crossed the *Hensley* threshold. *See Fast v. School District of Ladue,* 728 F.2d 1030 (8th Cir.1984) (en banc) (plaintiff prevails by "simple holding" that plaintiff was discharged without due process and the award of one dollar in nominal damages); *Pollack v. Baxter Manor Nursing Home,* 716 F.2d 545 (8th

### B. *No Special Circumstances Bar*

Losing defendants in civil rights cases have urged upon the lower courts a variety of considerations as "special circumstances" warranting the denial or limitation of § 1988 fee awards. In the case *sub judice,* defendants argue or imply that the fee award should be reduced or limited by the following considerations.

■ First, throughout this litigation, defendants have urged upon the Court various creative applications of the doctrines of qualified and absolute immunity. To the extent that argument remains alive for purposes of a fee award, the Court now puts it to rest permanently. The law is clear that *no* "special circumstances" justifying the denial or reduction of § 1988 fees inhere in the governmental status of defendants sued in their official capacity. "[F]ee awards against enforcement officials are run-of-the-mill occurrences." *Supreme Court of Virginia v. Consumers Union,* 446 U.S. 719, 739, 100 S.Ct. 1967, 1978, 64 L.Ed.2d 641 (1980). *See also Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978); *Venuti v. Riordan,* 702 F.2d 6, 7–8 (1st Cir.1983); *Cohen v. West Haven Board of Police Commissioners,* 638 F.2d 496, 505 (2d Cir.1980).

■ Second, the fact that the award will expend itself on the public treasury and, ultimately, on the taxpayers is not a consideration meriting a reduction in plaintiff's fee award. *Kirchberg v. Feenstra,* 708 F.2d 991, 999 n. 7 (5th Cir.1983); *Robinson v. Kimbrough,* 652 F.2d 458, 467

Cir.1983) (*per curiam* ) (plaintiff prevails by obtaining ruling that she was terminated without due process and an award of one dollar in nominal damages); *Lenard v. Argento,* 699 F.2d 874, 899 (7th Cir.1983), *cert. denied,* — U.S. ——, 104 S.Ct. 69, 78 L.Ed.2d 84 (1983); *McCann v. Coughlin,* 698 F.2d 112, 128 (2d Cir. 1983); *Basiardanes v. City of Galveston,* 682 F.2d 1203, 1220 (5th Cir.1982). Despite the fact that the $900,000 verdict mooted this issue, the above discussion in text was dictated because defendants' supplemental response to plaintiff's fee petition, filed after the second verdict, did not withdraw or abandon the argument that plaintiff had not prevailed in this action.

(5th Cir.1981). Similarly, budgetary problems or limited resources of the public defendant do not warrant the denial or reduction of fees under § 1988. *Hall v. Board of School Commissioners,* 707 F.2d 464, 465 (11th Cir.1983); *Lenard v. Argento,* 699 F.2d at 899–900. Therefore, despite defendants' status, they are fully liable for plaintiff's reasonable attorney's fees.

Defendants' next argument, and this contention is directly urged upon the Court, relates to plaintiff's contingent fee arrangement with his counsel. Defendants argue that counsel for plaintiff's fee award is limited by the nature of their contract with Spell which calls for compensation by counsel of *the greater of* (a) 50% of the damages judgment in the action *or* (b) the fee award set by this Court.[21] Defendants, focusing on option (a), advanced this argument after the $1,000 verdict was rendered in an effort to substantially limit the amount of the fee award, given the minimum amount of damages awarded by the jury.

[8] Although this argument, as with the previous discussion on prevailing parties, would appear moot after the second verdict on compensatory damages, defendants have not withdrawn or abandoned the contention. Therefore, to the extent defendants continue to argue that option (a) of the contingent fee contract in this case between plaintiff and his counsel somehow limits counsels' fee award, or defendants' payment thereof, the Court holds that the percentage recovery fixed in a contingent fee contract does not establish a ceiling on or otherwise limit the amount of a § 1988 award.[22] *Sisco v. J.S. Alberici Construction Co.,* 733 F.2d 55, 56–57 (8th Cir.1984); *Wojtkowski v. Cade,* 725 F.2d 127, 131 (1st Cir.1984); *Criswell v. Western Airlines,*

*Inc.,* 709 F.2d 544, 556 (9th Cir.1983), *aff'd* —— U.S. ——, 105 S.Ct. 2743, 86 L.Ed.2d 321 (1985); *Wheatley v. Ford,* 679 F.2d 1037, 1041 (2d Cir.1982).[23]

■ One final matter may also be summarily dispensed with at this point and that concerns defendants' assertion that a January 24, 1985, offer of settlement, tendered to plaintiff in the amount of $100,000 (including attorney's fees and expenses), somehow affects and limits counsel's § 1988 award. First, as with several arguments before the Court, this contention has been rendered moot by the $900,000 verdict. Second, even if the $1,000 verdict were in effect, the offer contained in the January 24 letter was simply an informal negotiating offer, one which was never accepted by the plaintiff. It certainly was not an offer of judgment consistent with the requirements of F.R.Civ.P. 68. *See Marek v. Chesny,* —— U.S. ——, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985). Accordingly, defendants' offer of January 24, 1985, is of no effect and does not in any manner limit plaintiff's § 1988 fees award.

Based on the aforesaid, the Court fails to find any special circumstances which would negate or limit plaintiff's entitlement to an award of reasonable attorney's fees under 42 U.S.C. § 1988.

#### C. *The Extent of Plaintiff's Success*

Because § 1988 authorizes an award of fees only to the "prevailing party," defendants object to an award of fees for the hours plaintiff's counsel spent preparing and litigating motions decided in defendants' favor, particularly plaintiff's November, 1984, motion and protective order. *See* n. 6 *supra.* In addition, implicit in defendants' contention that plaintiff was not the prevailing party, are the arguments

---

**21.** Plaintiff's counsel are directed to inform the court within 10 days after the filing of this order of the compensation method selected by them, the two options being mutually exclusive.

**22.** The Court notes that even if this case stood as it did on February 20, 1985, defendants' argument would be without merit since it ignores option (b) of the contract between Spell and his counsel.

**23.** In ruling that plaintiff's counsel is entitled to payment by the defendant of the full fee award notwithstanding the existence of a contingent fee contract, the courts have attempted to avoid any windfall benefit to defendants which would result if defendants were required only to pay the difference between the full § 1988 award and a smaller contingency fee. *See Sullivan v. Crown Paper Board Co.,* 719 F.2d 667, 669 (3d Cir.1983).

that because defendant Smith prevailed on the issue of liability and because the verdict was considerably less than the amount of damages prayed for in the complaint, plaintiff should not be allowed to recover fees attributable to those unsuccessful claims. The Court disagrees.

*Hensley v. Eckerhart, supra,* teaches that even when the Court finds the plaintiff to be a "prevailing party," thus, one entitled to recover fees under § 1988, the Court is required to determine the extent of plaintiff's success in order to determine the scope of the fee award. *Hensley* specifically addressed (1) the standards that govern reduction of a fee award to account for issues on which the fee applicant did not prevail and (2) the determination of whether the overall results obtained justify compensation for the related but unsuccessful issues. 103 S.Ct. at 1940; *See also Rybicki v. State Board of Elections of Illinois,* 584 F.Supp. 849, 856–57 (N.D.Ill. 1984); *Laffey v. Northwest Airlines, Inc.,* 572 F.Supp. at 363. The Court held that when a fee applicant has succeeded on only some of its claims for relief, the scope of the fee award turns upon two questions:

First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?

103 S.Ct. at 1940.

 Successful and unsuccessful claims will be considered "related" if they involve a "common core of facts" or "related legal theories." *Id.* An unsuccessful claim will be considered "unrelated" to a successful claim when "the relief sought on the unsuccessful claim is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury on which the relief granted is premised." *Mary Beth G. v. City of Chicago,* 723 F.2d 1263, 1265, 1279 (7th Cir.1983). If the claims for relief are unrelated, no fee is awarded for time spent in pursuit of the unsuccessful claim. *Hensley v. Eckerhart,* 103 S.Ct. at 1940.

However, in cases which contain only a single claim or present related multiple claims for relief, the Court recognized that

[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim by claim basis. Such a lawsuit cannot be viewed as a series of discrete claims [or motions]. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended in the litigation.

Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation.... *In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.* Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing the fee. The result is what matters.

*Id.* (citation omitted) (emphasis added).

 Applying the *Hensley* standards to this case, the Court has no difficulty in holding that the matters defendants identify as "unsuccessful" or "lost" issues or motions are not "distinct in all respects from [plaintiff's] successful claims." *Id.* at 1943. In point of fact, the claims against defendant Smith, for additional compensatory and punitive damages, and the motion to protect plaintiff's police witnesses from perceived feelings of intimidation and harassment, were directly "related" to plaintiff's successful claims in the lawsuit. Having so found, the Court's focus, pursuant to the dictates of *Hensley,* shifts to the extent of plaintiff's success.

Where the plaintiff has achieved only partial success, compensating him for all the hours expended on the litigation would be excessive. *Illinois Welfare Rights Organization v. Miller,* 723 F.2d 564, 567 (7th

Cir.1983). However, where the plaintiff has obtained "excellent results," counsel should normally recover a full compensatory fee. *Hensley v. Eckerhart*, 103 S.Ct. at 1940.

The Court has no hesitation in finding that plaintiff achieved "excellent results" in this litigation. Faced with the difficult task of proving a *Monell* police brutality claim, plaintiff prevailed on a vast majority of the issues in this case, overcoming the tenacious defenses and objections advanced by the defendants. The monetary award achieved was significantly large. By any standard of measure, the relief obtained in this action was substantial—both in absolute terms and in comparison to the scope of the litigation and the number of hours expended. *See Laffey v. Northwest Airlines, Inc.*, 572 F.Supp. 363–64.

Under these circumstances, the Court declines to reduce plaintiff's compensable hours because they failed to prevail against defendant Smith and on a handful of relatively minor motions and issues. *See United Slate, Tile, and Composition v. G & M Roofing*, 732 F.2d 495, 503 (6th Cir.1984); *Abraham v. Pekarski*, 728 F.2d 167, 175 (3d Cir.1984); *Rutherford v. Pitchess*, 713 F.2d 1416, 1421–22 (9th Cir.1983); *Marion v. Barrier*, 694 F.2d 229, 232 (11th Cir. 1982); *Lyons v. Cunningham*, 583 F.Supp. 1147, 1152–53 (S.D.N.Y.1983); *Society for Good Will v. Cuomo*, 574 F.Supp. 994, 999 (E.D.N.Y.1983), *vacated on other grounds*, 737 F.2d 1253 (2d Cir.1984).

## IV. *LODESTAR CALCULATION*

### A. *General Framework*

In calculating a "reasonable attorney's fee" for plaintiff, the Court is bound by the Supreme Court's framework for determining such awards set forth in *Hensley v. Eckerhart, supra* and *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Basically, this marketvalue methodology consists of three steps.

The initial step in the computation is to establish the number of hours reasonably expended in the litigation. *Hensley*, 103 S.Ct. at 1939. This figure is then multiplied by a reasonable hourly rate for coun-

sel, which is generally deemed to be the prevailing market rate for the services rendered. *Id., Blum*, 104 S.Ct. at 1547 n. 11. The burden is on the fee applicant to produce evidence that the requested rates are in line with those prevailing in the community for similar services, by lawyers of reasonably comparable skill, experience and reputation. *Id.* The sum of the two numbers is commonly referred to as the "lodestar" figure. *Ramos v. Lamm*, 713 F.2d 546, 552 (10th Cir.1983); *Furtado v. Bishop*, 635 F.2d 915, 920 (1st Cir.1980); *City of Detroit v. Grinnell Corp.*, 560 F.2d 1093, 1098 (2d Cir.1977); *Lindy Brothers Builders, Inc. of Philadelphia v. American Radiator & Sanitary Corp.*, 487 F.2d 161 (3d Cir.1973), *aff'd.* 540 F.2d 102 (3d Cir.1976) (en banc).

The final step in the methodology allows the Court to enhance or reduce the lodestar based upon contingency and quality adjustments. *National Association of Concerned Veterans v. Secretary of Defense*, 675 F.2d at 1328–29; *Copeland v. Marshall*, 641 F.2d at 892–94. As previously stated by the Court, because many of the calculations mandated by this framework are inherently imprecise and require certain approximations, the Court must, with some frequency, exercise its discretion—well informed by its detailed knowledge of the litigation before it—to arrive at the final fee award. *See Laffey v. Northwest Airlines, Inc.*, 572 F.Supp. at 361. Having reviewed plaintiff's fee application and defendants' objections thereto, the Court now begins its analysis to determine the appropriate lodestar figure.

### B. *Number of Hours Reasonably Expended*

The first component of any court-awarded attorney's fee is the number of hours reasonably expended on the litigation. *National Association of Concerned Veterans*, 675 F.2d at 1323. Although counsel are entitled to full compensation for their efforts, "[i]t does not follow that the amount of time *actually* expended is the amount of time *reasonably* expended." *Copeland v. Marshall*, 641 F.2d at 891. Since the prevailing party is not entitled to

those hours claimed that were not "reasonably expended," this Court's inquiry requires the resolution of two distinct yet related issues. The first concerns itself with how much time was actually spent on the litigation. The second focuses on the extent to which the commitment of time was reasonable in terms of the amount of time expended on each task. *Ramos v. Lamm,* 713 F.2d at 553; *Grendel's Den Inc. v. Larkin,* 582 F.Supp. 1220, 1225–26 (D.Mass.1984); *Wabasha v. Solem,* 580 F.Supp. 448, 458 (D.S.D.1984).

When reviewing the actual hours reported, the Court must distinguish between "raw" time and "hard" or "billable" time to determine the number of hours reasonably expended. *Ramos v. Lamm,* 713 F.2d at 553. "Billing judgment" is an important element of fee setting, whether the fee is set in the private sector by counsel or is established by court award; in either case, unnecessary or excessive hours must be excluded from the fee calculations. *Id., Laffey v. Northwest Airlines, Inc.,* 572 F.Supp. at 361. As the Court of Appeals for the District of Columbia Circuit stated in *Copeland v. Marshall, supra,*

> Compiling raw totals spent, however, does not complete the inquiry.... In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.

641 F.2d at 891 (emphasis in original).

In ascertaining which hours reported were reasonably expended, and thus billable, the Court must examine the total number of hours reported by each lawyer, the hours counsel allotted to specific tasks, whether those tasks would normally be billed to a paying client, and the potential duplication of services, particularly where multiple lawyers are involved. *Ramos v. Lamm,* 713 F.2d at 553–54. *See New York State Association for Retarded Children*

*v. Carey,* 711 F.2d 1136, 1146 (2d Cir.1983); *Johnson v. University College of University of Ala. in Birmingham,* 706 F.2d 1205, 1207–08 (11th Cir.1983), *cert. denied* 464 U.S. 994, 104 S.Ct. 489, 78 L.Ed.2d 684 (1983); *Copeland v. Marshall,* 641 F.2d at 903; *Northcross v. Board of Education of Memphis,* 611 F.2d 624, 636–7 (6th Cir. 1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980). These determinations must be made in the context of the specific case at bar; what is reasonable in one case may be excessive and unnecessary in another. The reasonableness of hours expended in a particular case depends upon the complexity of the case, the number of reasonable strategies pursued, and the responses necessitated by the tactics of the opponent. *Ramos v. Lamm,* 713 F.2d at 554; *Wabasha v. Solem,* 580 F.Supp. at 458. If these factors demand an extraordinary number of hours to perform a task, then those hours are properly billable. *Id.*

Finally, the Court must "weigh the hours claims against [its] own knowledge, experience, and expertise of the time required to complete similar activities." *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717 (5th Cir.1974). *See also Rajender v. University of Minnesota,* 546 F.Supp. 158, 165 (D.Minn.1982). In sum, the Court must carefully scrutinize the total number of hours reported by the prevailing party to arrive at the number of hours that can fairly and reasonably be charged to the losing party.

In *Hensley v. Eckerhart, supra,* the Supreme Court noted that the § 1988 fee applicant bears the burden of documenting and supporting the number of hours expended in the litigation. 103 S.Ct. at 1939–41. *See also National Association of Concerned Veterans,* 675 F.2d at 1323–24. The fee application should be supported by "contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney." *Id.* at 1327.[24] Initially, the application may be

---

**24.** The lack of contemporaneous time records would not justify an automatic reduction in hours, but reconstructed documentation would clearly allow, in the Court's discretion, a per-

centage reduction and certainly would demand closer scrutiny. *See Bonnette v. California Health & Welfare Agency,* 704 F.2d 1465, 1473 (9th Cir.1983; *Copper Liquor, Inc. v. Adolph*

accompanied by summaries of work performed, but the actual time sheets should be submitted to the Court in the event of a dispute concerning the reasonableness of the hours. *See id.* Plaintiff has done so in this case.

"Although it is not necessary to know 'the exact number of minutes spent nor the precise activity to which each hour was devoted,' the fee application must contain sufficient detail to permit both the Court and opposing counsel to conduct an informed appraisal of the merits of the application." *Laffey v. Northwest Airlines, Inc,* 572 F.Supp. at 361 quoting *National Association for Concerned Veterans,* 675 F.2d at 1327. *See also United Slate, Tile & Composition v. G & M Roofing,* 732 F.2d at 502 n. 2 (supporting documentation "must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended"); *Wotjtkowski v. Cade,* 725 F.2d at 130 (attorneys are "well-advised to maintain detailed, contemporaneous time records that will enable a later determination of the amount of time spent on particular issues"); *New York State Association for Retarded Children v. Carey,* 711 F.2d at 1148 (counsel *must* document their fee applications with contemporaneous time records specifying for each attorney "the date, the hours expended, and the nature of the work"); *White v. City of Richmond,* 713 F.2d 458, 461 (9th Cir.1983). In addition, the fee application should indicate what unproductive time, if any, was excluded from the fee petition in the exercise of "billing judgment." *National Association of Concerned Veterans,* 675 F.2d at 1327–28.

▆▆▆ As for defendants who seek to contest the reasonableness of hours claimed by plaintiff's counsel, their burden is to submit to the court "evidence" calling into question "the accuracy and reasonableness of the hours charged" or "the facts asserted in the affidavits" submitted by plaintiff.

*Blum v. Stenson,* 104 S.Ct. at 1545 n. 5. Absent exceptional circumstances, arguments and objections contained in a defendant's brief are not alone sufficient to create a genuine issue of fact warranting an evidentiary hearing on the reasonableness of the hours claimed. *Id.*

Having established the basic guidelines for analysis, the Court now turns to

### 1. *Plaintiff's Fee Application*

Plaintiff's counsel submitted the following materials documenting their fee request:

(1) a fourteen (14) page verified motion requesting attorney's fees and costs, setting forth the basic grounds for the same and detailing counsel's experiences and skills;

(2) a copy of the contingent fee contract with their client;

(3) eight (8) affidavits setting forth the date, the hours expended in tenths of hours and the nature of the work for all 2,087.6 hours requested;

(4) an additional affidavit containing a line-item list of litigation expenses incurred by counsel;

(5) a verified line-item bill of costs and supplemental bill of costs pursuant to 28 U.S.C. § 1920;

(6) a brief memorandum of law in support of the motion for fees and costs;

(7) a thirteen (13) page affidavit and reply to defendants' objections to plaintiff's motion;

(8) a five (5) page affidavit and reply to defendants' supplemental objections;

(9) four (4) affidavits from local attorneys providing prevailing community rate information; and

(10) counsel's contemporaneous time records (under seal).

Although plaintiff's documentation is flawed in a few minor aspects, *see* n. 25 *infra,* it basically comports with the re-

*Coors Co.,* 684 F.2d 1087, 1094–95 (5th Cir.1982); *Rybicki v. State Board of Elections,* 584 F.Supp. at 861 (N.D.Ill.1984); *Grendel's Den, Inc. v. Larkin,* 582 F.Supp. at 1227–29; *Williams v. Heard,*

568 F.Supp. 89, 90–91 (S.D.Tex.1983); *Brewster v. Dukakis,* 544 F.Supp. 1069, 1080 (D.Mass. 1982).

quirements for fee petitions delineated by this Court, *supra* at 1085–1086 and with the standards established in *National Association of Concerned Veterans*, 675 F.2d at 1327–29 and *Copeland v. Marshall*, 641 F.2d at 891.[25] Turning to counsel's individual requests, the hours claimed, separated by the Court into chronological litigation phases, break down as follows:

| | Pre-Trial #1 (Hrs. through 1-24-85) | Trial 1 (1-25-85 through 2-22-85) | Post-Trial 1/Pre-Trial 2 (2-21-85 through 4-1-85) | Trial 2 (4-2-85 through 4-4-85) | Post-Trial 2 (Hrs. since 4-4-85) | Fee Petition |
|---|---|---|---|---|---|---|
| Beaver | 653.5 | 196.1 | 81.9 | 21.6 | 7.8 | 17.1 |
| Richardson | 511.0 | 201.8 | 27.0 | 10.7 | 0 | 2.6 |
| Thompson | 101.0 | 154.7 | 12.0 | 17.9 | 0 | 0 |
| Holt | 54.2 | 6.0 | 10.7 | 0 | 0 | 0 |
| Totals | 1,319.7 | 558.6 | 131.6 | 50.2 | 7.8 | 19.7 |

### TOTAL HOURS REQUESTED

| | |
|---|---|
| Beaver | 978.0 |
| Richardson | 753.1 |
| Thompson | 285.6 |
| Holt | 70.9 |
| Total | 2,087.6 |

In addition, for purposes of reviewing the tasks performed and the reasonableness of the hours allotted to those tasks in light of defendants' objections, the Court has collapsed counsel's hours into seven work categories: (A) meetings with clients

25. The written materials and evidence submitted to the Court in support of plaintiff's fee application are generally well-organized, comprehensive and responsive to defendants' objections. However, there are some exceptions to this finding. First, plaintiff's brief on the legal issues involved in their fee application did not provide the depth of analysis required to fully respond to defendants' numerous objections and arguments, particularly as to hours expended. The Court realizes counsel's brief was filed with their original motion and, therefore, did not have the benefit of defendants' arguments in opposition, but counsel certainly had an opportunity to file a supplemental brief.

Second, although plaintiff's line-item affidavits of hours expended are exhaustive and provide all the required information, an initial summary of counsel's hours by task would have been of invaluable assistance to the Court. *See infra* at 1087–1089; *National Association of Concerned Veterans* at 1327 n. 11.

Third, although counsel's time logs submitted under seal clearly comply with the contemporaneous requirement and upon exhaustive review, the Court finds absolutely no deviation between these records and counsel's affidavits, the Court is concerned with the lack of complete standardization in recordation and with a few unclear and stricken entries of time on Mr. Beaver and Mr. Thompson's logs. In addition, the use of the term "trial preparation" as a description of service rendered, without further explanation, is not useful to the Court in determining the task performed and the reasonableness of the hours allotted to it. However, the Court does emphasize the general thoroughness of the records and the fact that no deviation exists between the hours requested and hours logged. In addition, no time is requested for unclear entries or for those stricken, and where hours have been reduced by striking, the claim is for the lesser hours—all of which involve trial days and are clearly correct.

Finally, to the extent any excessive or unreasonable hours have been claimed under the rubric of "trial preparation," such hours will be excluded by means of the percentage reduction imposed by the Court, *infra* at 1094–95. Considering most of these hours are claimed for days immediately preceding trial and during trial, the Court is frank to say it doubts any of the hours were unreasonably spent, but in fairness to defendants, a percentage reduction is required due to the uncertainty inherent in such entries.

and witnesses; (B) meetings and conferences with co-counsel; (C) drafting of pleadings and legal research; (D) court hearings, pre-trial conferences and general preparation for trial; (E) trial time; (F) formal and informal discovery; and (G) miscellaneous—serving subpoenas; meetings with juristic psychologist; preparation of exhibits; conferences with defense counsel and court personnel, etc.... *See Wabasha v. Solem*, 580 F.Supp. at 459–61; *EEOC v. Sage Realty Co.*, 521 F.Supp. 263, 271–73 (S.D.N.Y.1981). The Court further examined the hours claimed for each of these functions within the six litigation phases established above. This breakdown is as follows:

### PHASE 1—PRE-TRIAL #1

| | A[26] | B | C | D | E | F | G |
|------------|--------|------|-------|-------|---|-------|-------|
| Beaver | 87.0 | 11.7 | 231.7 | 45.9 | 0 | 122.2 | 155.0 |
| Richardson | 175.0 | 5.7 | 40.8 | 46.7 | 0 | 136.3 | 106.5 |
| Thompson | 32.5 | 0 | 12.0 | 43.0 | 0 | 12.0 | 1.5 |
| Holt | 8.0 | 2.5 | 14.1 | 2.5 | 0 | 4.2 | 22.9 |
| Totals | 302.5 | 19.9 | 298.6 | 138.1 | 0 | 274.7 | 285.9 |

### PHASE 2—TRIAL #1

| | A | B | C | D | E | F | G |
|------------|------|---|-----|-------|-------|---|-----|
| Beaver | 7.5 | 0 | 5.6 | 50.0 | 129.2 | 0 | 3.8 |
| Richardson | 4.4 | 0 | 0 | 64.1 | 131.7 | 0 | 1.6 |
| Thompson | 0 | 0 | 0 | 23.0 | 131.7 | 0 | 0 |
| Holt | 0 | 0 | 0 | 0 | 6.0 | 0 | 0 |
| Totals | 11.9 | 0 | 5.6 | 137.1 | 398.6 | 0 | 5.4 |

### PHASE 3—POST-TRIAL #1/PRE-TRIAL #2

| | A | B | C | D | E | F | G |
|------------|-----|------|------|------|---|---|------|
| Beaver | 3.0 | 8.2 | 31.5 | 13.6 | 0 | 0 | 25.6 |
| Richardson | 3.3 | 2.6 | 4.1 | 7.5 | 0 | 0 | 9.5 |
| Thompson | 1.0 | 4.0 | 0 | 2.0 | 0 | 0 | 5.0 |
| Holt | 0 | 5.2 | 5.5 | 0 | 0 | 0 | 0 |
| Totals | 7.3 | 20.0 | 41.1 | 23.1 | 0 | 0 | 40.1 |

### PHASE 4—TRIAL #2

| | A | B | C | D | E | F | G |
|------------|---|-----|---|-----|------|---|-----|
| Beaver | 0 | 1.4 | 0 | 2.3 | 15.9 | 0 | 2.0 |
| Richardson | 0 | 0 | 0 | 0 | 8.7 | 0 | 2.0 |
| Thompson | 0 | 0 | 0 | 0 | 15.9 | 0 | 2.0 |
| Holt | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Totals | 0 | 1.4 | 0 | 2.3 | 40.5 | 0 | 6.0 |

### PHASE 5—POST-TRIAL #2

| | A | B | C | D | E | F | G |
|--------|---|---|-----|-----|---|---|-----|
| Beaver | 0 | 0 | 2.6 | 0.6 | 0 | 0 | 4.6 |

**26.** The letters correspond to the functions described in the preceding paragraph.

### PHASE 5—POST–TRIAL #2

| | A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|---|
| Richardson | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Thompson | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Holt | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Totals | 0 | 0 | 2.6 | 0.6 | 0 | 0 | 4.6 |

### PHASE 6—FEE PETITION HOURS

| | A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|---|
| Beaver | 0 | 0 | 15.5 | 0 | 0 | 0 | 1.6 |
| Richardson | 0 | 0 | 2.6 | 0 | 0 | 0 | 0 |
| Thompson | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Holt | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Totals | 0 | 0 | 18.1 | 0 | 0 | 0 | 1.6 |

Prior to proceeding to defendants' objections, some preliminary thoughts are in order based upon a review of the information contained in plaintiff's petition and in the above tables. First, any evaluation of the reasonableness of counsel for plaintiff's hours must and will begin from the Court's view of the conduct of counsel during the course of this litigation. Without exception, Messrs. Beaver, Thompson, Richardson and Holt have performed their respective tasks in a professional and competent manner, never giving the Court reason to doubt the veracity of their representations. The Court presumes, as it does with all members of the Bar who appear before it unless shown to the contrary, that counsel have litigated all aspects of this action in good faith. The Court's view of counsel's conduct and performance is a critical factor when one considers the number of credibility determinations that are inherent in any fee petition analysis.

Second, in the Court's opinion, this complex § 1983 litigation was prepared and tried efficiently and expeditiously. The case went to trial exactly one year from the date the complaint was filed. The trial was conducted under exacting time limitations. For the litigation to have proceeded so swiftly, credit must be placed where it primarily belongs—with counsel. Therefore, absent *evidence* to support defendants' objections that plaintiff's counsel engaged in unproductive, wasted or unnecessary time, such assertions will be viewed with disfavor.

Third, given the scope and magnitude of this litigation, the number of issues to be resolved, witnesses to be interviewed, documents to be read, depositions taken, exhibits prepared and research conducted, plaintiff's total requested hours appear to be well within the range of reasonableness. *See Williamsburg Fair Housing Committee v. Ross-Rodney Housing Corp.*, 599 F.Supp. 509, 516 (S.D.N.Y.1984). No one request or line-item expenditure of time is so out of the ordinary or unusual that it demands a detailed explanation. *See e.g., Ramos v. Lamm*, 713 F.2d at 554 (more than 100 hours spent drafting the complaint); *Laffey v. Northwest Airlines, Inc.*, 572 F.Supp. at 364 (59.25 hours claimed for a motion to reconsider a previous ruling of the Court). None of the attorneys claimed an excessive number of hours for any one day or week. *See Ramos v. Lamm*, 713 F.2d at 553 n. 2. Duplication of hours for tasks and functions described with particularity appears minimal.

Fourth, from a review of plaintiff's verified motion, responses to objections, and time logs, the Court is convinced that plaintiff's counsel exercised considerable billing judgment. For example, absolutely no compensation is requested for the obvious investment of hundreds of hours of secretarial time. In addition, counsel have not sought compensation for either lodging or food during the second trial in Wilmington.

(*see also* conference of March 18, 1985, between co-counsel where hours for Messrs. Thompson and Richardson are specifically not claimed).

Finally, the Court finds that plaintiff's counsel honestly and accurately recorded their hours spent and submitted their claims in good faith. Defendants' assertions that plaintiff's counsel inaccurately recorded some of their time are meritless. *See* defendant's March 11, 1985, Response at 3–4, parag. 6. No credible evidence has been tendered by defendants to support such allegations. Of the three (3) affidavits filed by defendants in this regard, two can be dispensed with summarily. In one instance, the affiant (Hutcheson) was one of a number of witnesses contacted by Mr. Richardson on January 21, 1985, with regard to defendants' pre-trial witness list, *see* n. 11 *supra* at 1078, and the time spent talking with Hutcheson was included within a 3.6 hour line-item request for time expended interviewing all prospective defense witnesses on that same day. Hutcheson confirms in his affidavit that Richardson did indeed talk to him on the 21st. Hutcheson further states he has no idea whom else Richardson interviewed and how long those interviews may have lasted. Thus, Hutcheson's affidavit fails to provide any support for defendants' objection and plaintiff's verified and reasonable explanation is accepted. *See* plaintiff's Affidavit and Reply of April 9, 1985, at 5–6.[27]

The second affidavit (Dunn) simply reveals a clerical error in plaintiff's fee application. Two numbers, .9 and 2.3, were apparently transposed by counsel's secretary and plaintiff's response has corrected the error. *Id.* at 4–5. It is important to note that the actual total time reflected in the original affidavit of 3.2 hours for the combined activities was in fact correct.

The final affidavit and piece of evidence filed by defendants is from Ernest McCoy, an officer of the F.P.D. Officer McCoy contends that the 3.6 hours claimed by Mr. Richardson for interviews conducted with McCoy and another officer, Peregoy, on April 6, 1984, are excessive. This matter can be resolved on two grounds without the need for hearing. First, counsel's verified reply indicates that Peregoy was interviewed for a significant period of time prior to and after the McCoy interview so that, in fact, the 3.6 hours is a correct figure for the interviews of both officers. McCoy admits that during his interview with Richardson, they were joined by Peregoy and further concedes that he does not know whether Peregoy returned for an additional interview after McCoy's ended.

Second, testimony by witnesses at trial and exhibits introduced by the plaintiff established in an *uncontraverted* fashion the close personal relationship between McCoy and defendant Dixon. Given this background, plus the fact that counsel's contemporaneous time records are consistent with the hours as claimed, the Court finds the McCoy challenge to be without merit and allows the 3.6 hours to stand.

This being the sum total of defendants' evidence to support their claim that plaintiff's hours are inaccurate, the Court holds the hours claimed by counsel were actually expended and turns to

## 2. Defendants' Objections to the Reasonableness of Time Spent

As previously stated, defendants have sifted through the affidavits of plaintiff's counsel and registered specific line-item objections to approximately 45% of the hours claimed for specific tasks performed. Utilizing the same phases system of cataloging the hours as employed *supra* at 1087–1088, defendants' objections break down as follows:

| | Pre-Trial #1 | Trial 1 | Post-Trial 1/Pre-Trial 2 | Trial 2 | Post-Trial 2 | Fee Petition |
|---|---|---|---|---|---|---|
| Beaver | 215.0 | 1.5 | 17.7 | 0 | 0 | 0 |
| Richardson | 239.2 | 185.4 | 2.0 | 10.7 | 0 | 0 |

**27.** Counsel's contemporaneous time log is consistent with this explanation.

| | Pre-Trial #1 | Trial 1 | Post-Trial 1/Pre-Trial 2 | Trial 2 | Post-Trial 2 | Fee Petition |
|---|---|---|---|---|---|---|
| Thompson | 89.0 | 137.5 | 5.2 | 17.9 | 0 | 0 |
| Holt | 11.7 | 0 | 0 | 0 | 0 | 0 |
| Totals | 554.9 | 324.4 | 24.9 | 28.6 | 0 | 0 |

Total Reduction Request

| Beaver | – 234.2 |
|---|---|
| Richardson | – 437.3 |
| Thompson | – 249.6 |
| Holt | – 11.7 |
| Total | – 932.8 |

Utilizing the same function or task system of cataloging the hours as employed *supra* at 1088–1089, defendants' objections break down as follows:

### PHASE 1—PRE–TRIAL #1

| | A[28] | B | C | D | E | F | G |
|---|---|---|---|---|---|---|---|
| Beaver | 45.8 | 4.5 | 23.9 | 14.3 | 0 | 78.7 | 47.8 |
| Richardson | 126.6 | 0 | 20.3 | 39.3 | 0 | 14.1 | 38.9 |
| Thompson | 31.5 | 0 | 4.0 | 43.0 | 0 | 9.0 | 1.5 |
| Holt | 5.0 | 2.5 | 0 | 0 | 0 | 4.2 | 0 |
| Totals | 208.9 | 7.0 | 48.2 | 96.6 | 0 | 106.0 | 88.2 |

### PHASE 2—TRIAL #1

| | A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|---|
| Beaver | 0 | 0 | 0 | 1.5 | 0 | 0 | 0 |
| Richardson | 4.4 | 0 | 0 | 60.0 | 119.4 | 0 | 1.6 |
| Thompson | 0 | 0 | 0 | 23.0 | 114.5 | 0 | 0 |
| Holt | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Totals | 4.4 | 0 | 0 | 84.5 | 233.9 | 0 | 1.6 |

### PHASE 3—POST–TRIAL #1/PRE–TRIAL #2

| | A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|---|
| Beaver | 0 | 2.4 | 5.8 | 6.8 | 0 | 0 | 2.7 |
| Richardson | 0 | 0 | 0 | 0 | 0 | 0 | 2.0 |
| Thompson | 0 | 3.2 | 0 | 0 | 0 | 0 | 2.0 |
| Holt | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Totals | 0 | 5.6 | 5.8 | 6.8 | 0 | 0 | 6.7 |

28. For ease of the reader, the categories, once again, are: (A) meetings with clients and witnesses; (B) meetings and conferences with co-counsel; (C) drafting of pleadings and legal research; (D) court hearings, pre-trial conferences and general preparation for trial; (E) trial time; (F) formal and informal discovery; and (G) miscellaneous.

PHASE 4—TRIAL #2 [29]

| | A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|---|
| Beaver | 0 | 0 | 0 | 0 | 8.7 | 0 | 2.0 |
| Richardson | 0 | 0 | 0 | 0 | 15.9 | 0 | 2.0 |
| Thompson | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Holt | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Totals | 0 | 0 | 0 | 0 | 24.6 | 0 | 4.0 |

Defendants' objections are contained in three documents; a 35 page "Response" to plaintiff's motion filed March 11, 1985; an 18 page memorandum of law in support of the March 11 Response; and a 3 page supplemental list of objections, filed April 22, 1985. Therein, defendants object to approximately 45% of plaintiff's hours claims as unreasonably spent. Aside from the McCoy, Dunn and Hutcheson affidavits discussed earlier in this opinion, and a few documents relating to defendants' assertion regarding settlement negotiations between the parties, *supra* at 1082, defendants' 200 + objections to plaintiff's hours are void of evidentiary support. Although defendants were provided ample opportunity to object to plaintiff's fee application and submit evidentiary support for their position, none has been forthcoming.[30] Defendants have patently failed to comply with the requirements of *Blum v. Stenson*, 104 S.Ct. at 1545, n. 5 and *National Association of Concerned Veterans*, 675 F.2d at 1338 (Tamm, J; concurring).

The Court assumes defendants' counsel billed their clients (and received payment) for the erroneous outlays of time made on their behalf; yet by filing such cavalier objections to plaintiff's request, it seems defendants are determined to preclude plaintiff's counsel from doing the same. It thus appears that defendants are attempting to invoke a double standard for this fee litigation—one set of rules governing payment of defense counsel and quite another for plaintiff's counsel. *See Laffey v. Northwest Airlines, Inc.*, 572 F.Supp. at 388. Just as an example, defendants object

to nearly all the trial time of Messrs. Richardson and Thompson, in essence arguing the case should have been tried solely by Mr. Beaver. Yet defendants employed three counsel throughout the entire course of the first trial, and four at the second trial. The Court has no reason to believe defense counsel were not fully and independently paid for their hours at trial; certainly defendants have never filed any affidavit or evidence to the contrary. Such evidence would have been of considerable support to defendants' otherwise frivolous argument.

Nevertheless, despite defendants' lack of evidence, this Court must and will review plaintiff's claim of hours expended to determine their reasonableness in light of defendants' objections. *Northcross v. Board of Education*, 611 F.2d at 636. This analysis will, however, be conducted in view of the foregoing statements by the Court.

(a) *Multiple Representation and Duplication of effort*

Defendants' initial protest is that the hours submitted are unreasonable because of excessive duplication of services by plaintiff's counsel throughout Phases 1–4 of the litigation. They argue that it was unreasonable for two or three attorneys to simultaneously represent plaintiff at hearings, meetings, pre-trial conferences, and trial. While defendants may view the representation by multiple counsel as wasted effort, this Court concludes defendants have failed to show such representation was in fact unreasonable.

That a losing party should not be charged with litigation costs arising from excessive, unnecessary or duplicative time

---

**29.** No tables appear for Phases 5 and 6 since no objections were lodged by defendants for those periods of time.

**30.** As previously indicated, defendants have never moved for an evidentiary hearing nor did they even request plaintiff's contemporaneous time logs until plaintiff volunteered said records

for the Court. The Court notes, however, that it subsequently determined, *sua sponte*, that an evidentiary hearing was not required and that plaintiff's contemporaneous and original time records need not be disclosed. *See* Orders of May 10 and May 29, 1985.

indulged in by prevailing counsel as a result of their lack of an organized subdivision of labor or, simply through inexperience, is beyond cavil. *Furtado v. Bishop*, 635 F.2d at 920; *Benitez v. Collazo*, 571 F.Supp. 246, 251 (D.P.R.1983). The use of multiple counsel, however, is not unreasonable per se. *Johnson v. University College*, 706 F.2d 1205, 1208 (11th Cir.1983); *Williamsburg Fair Housing Committee v. Ross-Rodney Housing Corp.*, 599 F.Supp. at 518. *See also Craik v. Minnesota State University Board*, 738 F.2d 348, 350 (8th Cir.1984) (per curiam); *New York State Association for Retarded Children v. Carey*, 711 F.2d at 1146; *Seigal v. Merrick*, 619 F.2d 160, 164 (2d Cir.1980). Indeed, the retention of multiple counsel in a complex, lengthy and significant civil rights case, such as this one, is understandable and not alone a ground for reducing the hours claimed. *Johnson v. University College, supra; See also Bowman v. Pulaski County Special School District*, 723 F.2d 640, 646 (8th Cir.1983); *Wuori v. Concannon*, 551 F.Supp. 185, 194 (D.Me.1982).

■ Thus, the proper focus is not on whether multiple counsel were employed *per se*, but on the reasonableness of the division of responsibility between counsel and the execution of that division. Reduction of hours is warranted only if counsel *unreasonably* duplicate each other's work. In cases such as the one at bar, division of responsibility may require more than one attorney to attend such activities as conferences, hearings and depositions, and certainly dictate the participation of multiple counsel at trial. *Williamsburg*, 599 F.Supp. at 518. In preparing for trial, multiple counsel may also be essential for planning strategy and evaluating facts or the law. *See Ross v. Saltmarsh*, 521 F.Supp. 753, 762 (S.D.N.Y.1981), *aff'd. mem.*, 688 F.2d 816 (2d Cir.1982). An award for time expended by two or more counsel is proper, provided it reflects the distinct contribution of each lawyer to the case. *Johnson v. University College, supra; Ward v. Kelly*, 515 F.2d 908, 912 n. 11 (5th Cir.1975). *See also Vulcan Society of Westchester County v. Fire Department of White Plains*, 533 F.Supp. 1054, 1060 (S.D.N.Y.1982).

The Court has reviewed the affidavits submitted by plaintiff's counsel and finds that counsel carefully divided the work to be performed in such a manner as to avoid duplication. *See* plaintiff's March 11, 1985, Motion for Attorney's Fees at 4–7. Mr. Beaver served as lead plaintiff's counsel throughout this litigation and was primarily responsible for legal research, preparation of pleadings and briefs, reviewing F.P.D. internal documents disclosed through discovery, arranging for expert testimony by Dr. George Kirkham and the development of plaintiff's Exhibit 71, which formed the core of plaintiff's documentary evidence at trial. In addition, lead counsel performed the usual functions attributable to that role, *viz.*, arrangement of the presentation of evidence, assignment of roles for associate counsel, meeting with opposing counsel, examination of a majority of witnesses, etc...

Mr. Richardson's primary responsibility was witness discovery, interview, contact and preparation for trial, particularly civilian witnesses, who testified as to past abuse by the F.P.D., and police witnesses. As a former local Assistant District Attorney, the latter assignment was eminently reasonable and in that vein, Mr. Richardson conducted direct examination of a number of police officers at trial. He was also assigned basic responsibility for the research and development of those portions of the trial involving the alleged "quota system" for arrests and the "Jacksonville Report."

Mr. Thompson joined Beaver, Holt & Richardson in October, 1984, and, given his prior trial experience, immediately became a member of the litigation team with primary responsibility for preparation of plaintiff's medical evidence as well as cross-examination of defendants' anticipated medical experts. In addition, Mr. Thompson's background as a former local District Attorney would appear to have been of invaluable assistance to plaintiff's case.

Mr. Holt's responsibility lay with the jury selection process. In this regard, he arranged for a public opinion poll, the as-

sistance of a juristic psychologist, prepared all motions and briefs concerning jury selection and drafted a jury questionnaire, which subsequently was distributed by the Court.[31]

Given the nature of this legally and factually complex lawsuit, the Court finds plaintiff's purported division of responsibility to be reasonable. The question now becomes whether that division was effectively and efficiently implemented during the course of the litigation.

In reviewing plaintiff's time logs and designation of tasks performed, the Court has assessed the possibility that the reported hours include unnecessary duplication due to the presence of multiple counsel at a number of hearings, discovery proceedings and trial. This analysis has been conducted by evaluating the roles actually played by the lawyers in the litigation generally versus the stated division of responsibility. *Ramos v. Lamm,* 713 F.2d at 554. Although it is impossible for the Court to evaluate each hour of time claimed and each hour objected to, *New York Association for Retarded Children v. Carey,* 711 F.2d at 1146, the Court holds that (1) plaintiffs fully utilized their division of responsibility with little or no apparent duplication of effort,[32] (2) the time charged by multiple counsel was only for those instances where cooperative effort by counsel appeared reasonably necessary to efficiently achieve a

productive result[33] and (3) the use of multiple counsel at pre-trial[34] and trial[35] was substantially justified. *See Williamsburg,* 599 F.Supp. at 518; *Grendel's Den v. Larkin,* 582 F.Supp. at 1226–27.

Lending support to the Court's conclusion is the fact that defendants themselves were represented by multiple counsel at every hearing before the Court as well as at trial. The defendants' use of three and four attorneys may have, in itself, contributed to the plaintiff's need for representation by multiple counsel. *Williamsburg,* 599 F.Supp. at 518; *Wuori v. Concannon,* 551 F.Supp. at 194; *See also Seigal v. Merrick,* 619 F.2d at 164 (The court was reluctant "to deprive a lawyer of the aid of even one associate in conferences or court appearances when ... he was often confronted with a bevy of hostile lawyers for the multiple parties on the other side ...") As defendants obviously understood, zealously representing one's client does not include drawing straws to determine which attorney should attend crucial conferences, meetings, hearings and trial. *Rajender v. University of Minnesota,* 546 F.Supp. 158, 166 (D.Minn.1982).

In conclusion, some of the time charged by plaintiff's counsel is duplicative, but absolutely no evidence has been proffered which would show that the duplication of time was unreasonable or unnecessary. However, despite this conclusion, the

---

**31.** In the opinion of Magistrate Dixon, this questionnaire reduced substantially the number of trial hours required to select the jury.

**32.** For example, a review of plaintiff's Phase 1 table, *supra* at 1088, shows a high concentration of Mr. Beaver's hours in legal research and drafting as well as discovery (F.P.D. documents) —his purported area of responsibility, while Mr. Richardson's hours indicate a minimum of legal research and an emphasis on witness contact and discovery, his purported areas of specialty within counsel's division. The tables further show that a vast majority of the drafting of pleadings and legal research throughout the entire litigation was accomplished by Mr. Beaver with literally no duplication of effort by co-counsel.

**33.** For example, in reviewing, copying, analyzing and collating the 14,000 pages of F.P.D. internal documents, and conferences between

counsel "necessary in putting together a lawsuit of this magnitude." *Willie M. v. Hunt,* 90 F.R.D. 601, 602 (W.D.N.C.1981).

**34.** Although Mr. Beaver generally lead plaintiff's arguments at the pre-trial conferences and hearings before Magistrate Dixon, a review of the transcript establishes timely and important contributions in analysis from Messrs. Richardson and Thompson; *e.g.,* Mr. Thompson's argument at the January, 1985 pre-trial hearing regarding the application of the "business records" exception to the hearsay rule to a number of defendants' internal documents.

**35.** The Court's trial notes make clear that the presentation and cross-examination of witnesses at trial was shared by the three lawyers, clearly according to the prescribed division of responsibility. *See Akron Center for Reproductive Health v. City of Akron,* 604 F.Supp. 1275, 1286 n. 6 (N.D.Ohio 1985).

Court, in its discretion, will employ a 5% across-the-board reduction in counsel's requested hours for Phases I–IV,[36] in order to eliminate any unreasonable duplication that might have been overlooked, errors committed by this Court in denying defendants' excessive hours objections *infra* at 1095–1099, and as a "practical means of trimming any fat from [plaintiff's] fee petition." *New York Association for Retarded Children v. Carey,* 711 F.2d at 1146; *Louisville Black Police Officers v. City of Louisville,* 700 F.2d 268, 278–79 (6th Cir. 1983) (across-the-board percentage reduction of claimed hours for duplication); *Sanchez v. Schwartz,* 688 F.2d 503, 507 (7th Cir.1982) (percentage reduction for excessive hours); *Copeland v. Marshall,* 641 F.2d at 903 (same); *Northcross v. Board of Education of Memphis,* 611 F.2d at 636–37 (same); *Merkel v. Scovill, Inc.,* 590 F.Supp. 529, 533 (S.D.Ohio 1984), (same).

Accordingly, plaintiff's hours as adjusted by phases of the litigation are as follows:

| | Pre-Trial #1 | Trial 1 | Post-Trial 1/Pre-Trial 2 | Trial 2 | Post-Trial 2 | Fee Petition |
|---|---|---|---|---|---|---|
| Beaver | 620.8 | 186.3 | 77.8 | 20.5 | 7.8 | 17.1 |
| Richardson | 485.4 | 191.7 | 25.6 | 10.2 | 0 | 2.6 |
| Thompson | 95.9 | 147.0 | 11.4 | 17.0 | 0 | 0 |
| Holt | 51.5 | 5.7 | 10.2 | 0 | 0 | 0 |
| Totals | 1253.6 | 530.7 | 125.0 | 47.7 | 7.8 | 19.7 |

TOTAL HOURS ALLOWED AFTER 5% REDUCTION

| | | |
|---|---|---|
| Beaver | – | 930.3 |
| Richardson | – | 715.5 |
| Thompson | – | 271.3 |
| Holt | – | 67.4 |
| Total | | 1,984.5 |

### (b) *Excessive Hours for Interviewing Witnesses*

Defendants next argue that plaintiff's counsel expended an excessive amount of time interviewing witnesses and, further, that a number of these witnesses never testified at trial, thereby rendering all time spent with them unproductive.[37] Counsel for plaintiff respond, by means of verified affidavit, that "[t]he time spent on interviews was thought necessary by the attorneys to properly interview the people as to their knowledge. While it is true that some of the people were not even called at trial for witnesses, we certainly do not

---

**36.** Since defendants do not object to any of plaintiff's claimed hours in Phases V and VI, the Court declines to enforce a reduction in these phases.

**37.** Defendants also request a reduction for the hours claimed in interviewing "CSI"'s (Confidential Sources of Information). Defendants request is denied because plaintiff's April 9, 1985, Affidavit and Reply offers a plausible argument, consistent with their pre-trial contentions, that a number of individuals within the F.P.D. and City government were willing to discuss the case with counsel and provide information to them only on the assurance that their names would not be divulged for fear of retaliation and reprisal. Given the nature and course of this lawsuit, the Court accepts this explanation by counsel and will not force disclosure of the interviewees' names for purposes of this petition. The number of hours claimed for these interviews is minimal –21.8 (solely by Mr. Richardson), and, as such, any excessive hours expended within the 21.8 are subsumed within the Court's 5% reduction *supra.*

expect to call to trial every person that we interview in preparing a case." April 9, 1985, Affidavit and Reply at 6.

Having reviewed counsel's expenditure of time in meeting with witnesses, *see* tables *supra* at 1088–89, this Court finds defendants' conclusory assertions without merit. Forty-one (41) witnesses testified at trial and between plaintiff and defendants' pre-trial witness lists, over 190 were anticipated for trial. In addition, common sense dictates that many more persons than appear on counsel's witness lists possessed relevant information regarding the case, and thus were proper subjects for interview. Plaintiff's counsel request compensation for 321.7 hours for witness and client interviews. This amounts to approximately 1¾ hours of interview time per potential witness, disregarding any time for those persons not listed. Considering the length of some witnesses' testimony at trial alone, the Court does not find plaintiff's interview time excessive or unreasonable.

In addition, with regard to all of defendants' contentions of excessiveness on the part of plaintiff's counsel, the assertion of numerous objections and defenses by imaginative defense counsel prolonged and complicated many phases of this litigation. Defendants' "contentious litigation strategy forced the plaintiff to respond.... [Defendants] cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *Copeland v. Marshall,* 641 F.2d at 904. (footnote omitted).

Finally, as to defendants' unique argument that all witnesses interviewed during the discovery stage of the litigation must have been called to testify at trial in order for counsel to be compensated for their pre-trial investment of time, the Court finds the claim patently frivolous, and therefore will not devote time addressing the merits of the objection. Defendants' motion to strike plaintiff's pre-trial interview hours as excessive is summarily denied.

#### (c) *Allocation of Tasks Between Counsel and Staff*

Defendants contend that "substantial" tasks in this lawsuit could have been completed competently by a paralegal or secretary, yet were performed by counsel. Specifically, defendants point to filing pleadings with the court, serving subpoenas on witnesses, copying F.P.D. internal documents and obtaining certain discovery materials. As a consequence, defendants assert that the allocation of tasks was inefficient and request the Court to reduce plaintiff's hours and fees accordingly.

Defendants argument is not wholly without merit. Plaintiff's counsel did indeed spend a number of hours copying documents, filing pleadings and serving subpoenas. To the extent secretaries could have been competently employed to perform some of this work, the Court reduces Mr. Beaver and Mr. Richardson's Phase I requests by five (5) hours each.

However, the vast majority of defendants' objections in this area must fail because their argument is predicated on the erroneous assumption that a single, correct staffing pattern exists within every law firm for every lawsuit. Defendants' assertion followed to its logical conclusion stands for the proposition that plaintiffs' counsel in a civil rights action have an obligation to conduct their case in a minimally competent way. *Laffey v. Northwest Airlines, Inc.,* 572 F.Supp. at 366. This approach would defeat the goal defendants' methodology purports to serve: the efficient conduct of litigation. *Id.*

There are many circumstances where it is more efficient and reasonable for counsel to perform such tasks as compilation of discovery materials or exhibits, filing pleadings, or subpoenaing a witness than for secretaries or paralegals to do the same. Plaintiff, in responding to defendants' argument, has proffered several legitimate reasons for the expenditure of these hours. First, with regard to serving subpoenas on witnesses, this activity occurred for the most part during the two weeks prior to the first trial. Plaintiff's affidavits, partic-

ularly Mr. Richardson's, indicate that in many cases service was accompanied by a final interview of the witness and pre-trial preparation. In essence, two birds were killed with one stone; service was accomplished and the final pretrial interview conducted. Furthermore, in a case where a number of witnesses appeared to require constant reassurance by plaintiff's counsel, e.g., Charles Livingston, Barry Fischer and Roy Matthews, personal service of subpoenas rather than by secretary or sheriff on the eve of trial was clearly reasonable.

Second, as for the copying of documents, counsel for plaintiff indicate that substantial discussion and analysis of the documents occurred at the time they were being copied. Documents were screened, arranged, alphabetized and marked for future use. As counsel suggest, in a case of this magnitude with the number of documents and exhibits involved, if this work had been performed by a secretary, it would, at some time or another, have to have been reviewed by counsel. *See* April 9, 1985, Affidavit and Reply at 10. Counsel argue that the 43 hours spent reviewing, copying, discussing and marking defendants' 14,000 pages of internal reports "was perhaps the most important time spent on this case by plaintiff's counsel ..." *Id.* After reading many of these documents at trial, the Court is not in a position to disagree with that statement.

The allocation of responsibility between counsel and their staff is a function of many variables and " '[i]t is an inherent part of an attorney's task to determine what types of expertise should be brought to bear on a legal problem ... [a]bsent a clear misallocation of resources, the Court

is unwilling to second-guess counsel's judgment.' " *Laffey v. Northwest Airlines, Inc.,* 572 F.Supp. at 366 citing *Connors v. Drivers, Chauffeurs & Helpers Local Union 639,* Slip Op. No. 82–1840 at 15 (D.D.C., March 4, 1983). With the exception of ten (10) hours, the Court perceives no clear misallocation of resources by plaintiff's counsel.[38]

### (d) *Excessive Hours for Listening to Tapes*

Defendants next argue that 14.3 hours expended by Mr. Beaver listening to tape recordings of a Fayetteville Civil Service Commission hearing regarding the complaint of Cecilia Gray, a former officer of the F.P.D., were excessive, particularly considering Ms. Gray never testified. Ms. Gray was fired by the defendant City for allegedly falsely reporting she had witnessed defendant McDaniel kick a man in the groin and defendant Dalton strike him with a Kel-Lite. In that hearing, defendant McDaniel and former defendant Smith testified, as did numerous other witnesses involved in or relevant to this lawsuit.[39] Counsel for plaintiff claim that it was necessary to review, in detail, the testimony at Ms. Gray's hearing of defendant McDaniel and former defendant Smith for purposes of discovery and cross-examination at trial. Given the nature of the Gray hearing, the logic of counsel's response is obvious. In addition, the court's notes indicate considerable testimony was evinced on this matter at trial.

Accordingly, defendants' objections to Mr. Beaver's allocation of 14.3 hours to the *Gray* tapes are overruled.[40]

---

**38.** Accordingly, plaintiff's hours as adjusted are as follows:

| | | |
|---|---|---|
| Beaver | – | 925.3 |
| Richardson | – | 710.5 |
| Thompson | – | 271.3 |
| Holt | – | 67.4 |
| Total | | 1,974.5 |

An alternative available to the Court was to compensate the ten hours at a reduced rate, but in an effort to further eliminate the possibility of any claim for unreasonable hours, the Court

has simply excluded the hours from any consideration.

**39.** Ms. Gray has since filed suit in federal court and that case is pending before this Court on a memorandum and recommendation from Magistrate Dixon disposing of a number of pre-trial motions. *Gray v. Dixon,* No. 84–67–Civ–3.

**40.** Defendants' comment that the *Gray* tapes could have been reviewed by counsel for plaintiff's secretary is frivolous. *See* defendants' March 11, 1985, Response at 7.

### (e) *Attorney Education and Background Research*

Defendants complain that further reductions should be made in counsels' hours because they seek compensation for time spent on irrelevant background research. What defendants fail to mention in the text of their March 11, 1985, Response or Memorandum of law is that their sole line-item objection in this category is for 5.1 hours of research conducted by Mr. Beaver on February 10, 1984. Plaintiff's counsel claims compensation on that date for reading materials on the history of police training in North Carolina and a handbook on police misconduct.

■■■ First, counsel are not forbidden from receiving fees for background research if the research is (1) relevant and (2) reasonable in terms of time for the scope and complexity of the litigation. *New York Association for Retarded Children v. Carey*, 711 F.2d at 1146; *Ross v. Saltmarsh*, 521 F.Supp. at 757–59.

Second, reading materials on police misconduct and the history of police training in North Carolina in preparation for a police brutality lawsuit, where one of the major allegations is the existence of a *de facto* policy of inadequate training, seems clearly relevant to the Court. Furthermore, 5.1 hours expended on this topic can hardly be classified as excessive. Defendants' objections are overruled.

### (f) *Excessive Hours Reviewing News Articles*

Defendants next assert that Mr. Beaver should not be compensated for 9.3 hours expended reviewing and researching local newspaper articles. Counsel for plaintiff argues that during the relevant period of time a "tremendous" number of newspaper articles were published concerning the *Gray* firing and Civil Service Commission hearing, the "Jacksonville Report" and the "quota" system. Counsel claims that extensive background knowledge of these highly relevant matters was initially obtained from a careful review of the articles.[41]

The Court notes that often informal discovery and investigation prove more valuable than any formal discovery disclosed by the opposition, and therefore accepts counsel for plaintiff's verified explanation for the 9.3 hours and finds that expenditure of time to have been relevant and reasonable in length.[42]

### (g) *Conferences With Other Local Attorneys and the District Attorney*

Defendants claim that a "substantial" number of hours requested consist of uncompensable conferences with local attorneys "handling other cases against the police department" and conferences with the local district attorney. Plaintiff responds that the limited number of hours expended in this area by counsel reaped substantial benefits; to-wit, information on at least three cover-ups within the F.P.D. and further allegations of brutality.

Reviewing defendants' line-item objections, the "substantial" number of hours referred to totals 6.7. The Court does not consider 6.7 hours out of 2,087.6 requested substantial. Furthermore, defendants have offered no evidence to support their assertion that this time expended by plaintiff's counsel was unreasonable, excessive

---

**41.** Defendants do not contest the existence of these articles, they simply assert such research time is not compensable, particularly when the articles were not tendered at trial as exhibits. For the Court's analysis on the latter point, *see supra* at 1096.

**42.** This appears as appropriate a place in the order as any to specifically deny defendants' objections to Mr. Richardson's expenditure of 8.7 hours for investigation of Daniel Dixon, Jr., a former officer of the F.P.D. and son of defendant Dixon. Considering the importance of the testimony at trial regarding the allegations of

misconduct and brutality leveled against Dixon, Jr. and the alleged cover-up of some of these incidents by defendants Johnson and Dixon, the 8.7 hours spent by Mr. Richardson clearly were not excessive and were highly relevant to the fundamental issues at trial. As this Court has previously noted, the evidence at trial concerning Dixon, Jr.'s conviction in the Superior Court of Cumberland County in the *Parker* incident, and the lack of assistance from the F.P.D. given the assistant district attorney who prosecuted the case, appears to have been extremely damaging to defendants Dixon and Johnson. *See* Order of March 12, 1985, at 13.

or unnecessary. Plaintiff's response was filed by verified affidavit and, as such, it remains the only evidence of record.

A common sense view of the likely purposes behind such conferences also supports plaintiff's position. The Court notes that there are a number of pending lawsuits in federal court against the F.P.D. and the City of Fayetteville. *E.g., Pirro v. City of Fayetteville,* No. 84–72–CIV–3; *Rodriguez v. McGuinness,* No. 84–28–CIV–3; *Gray v. Dixon, supra* at n. 40. For prosecuting counsel in those cases and others similarly filed to confer, share information and plan strategy. Such conferences should result in a significant savings of time by limiting duplication of effort between counsel.

As for conferences with the district attorney and his staff, defendants' objection is void of any merit. One assistant district attorney, James Ammons, Jr., testified at length at trial. The district attorney, Edward W. Grannis, Jr., was listed as a witness on plaintiff's pre-trial witness list. Certainly, information regarding past criminal allegations of police misconduct and subsequent convictions could be obtained by discussing those cases with the person who prosecuted them.

Accordingly, the Court finds counsel's claim for 6.7 hours reasonable and defendants' objections are overruled.

#### (h) *Travel*

Defendants' final argument concerns Mr. Beaver's claim for 32 hours spent on a two day trip to Florida to meet with Dr. George Kirkham, plaintiff's expert in the field of police civil liability. Defendants argue, and with considerable merit, that some of these hours must have been spent sleeping, eating, etc. ... and, therefore, should not be fully compensated.

Plaintiff responds that (1) a considerable period of time was spent in travel due to the lack of expeditious air connections between Fayetteville and Jacksonville, Florida; (2) numerous hours were spent in actual conference with Dr. Kirkham and many others in reviewing documents and preparing for the conference while in flight; and (3) only 5½ hours were spent sleeping and 1½ for meals.

Any argument that travel, *per se* is uncompensable is incorrect. Counsel retained by clients who pay on a regular hourly basis customarily charge for travel time and civil rights counsel should be treated no differently. *Craik v. Minnesota State University Board,* 738 F.2d at 350. As Judge Posner recently stated for the Seventh Circuit in *Henry v. Webermeier,* 738 F.2d 188, 194 (1984):

When a lawyer travels for one client he incurs an opportunity cost that is equal to the fee he would have charged that or another client if he had not been traveling. That is why lawyers invariably charge their clients for travel time and usually at the same rate they charge for other time ... And if they charge their paying clients for travel time they are entitled to charge the defendants for that time in a case such as this where the plaintiffs have shown a statutory right to reasonable attorney's fees ... the presumption ... should be that a reasonable attorney's fee includes reasonable travel time billed at the same hourly rate as the lawyer's normal working time.

The Court agrees with Judge Posner's analysis, but like any other block of time, the hours must not be unreasonable, excessive, or of such a concentrated nature that unproductive time must, of necessity, have been included within the expenditure.

Applying the above principles, the Court reduces plaintiff's Phase I hours by ten to a total of 22 due to the probable inclusion of unproductive time. Other than this reduction, counsel's travel hours are fully compensable.[43]

#### 3. *Conclusion—Total Compensable Hours*

 With the few minor exceptions noted in the body of this opinion, counsel for plaintiff's records are more than adequate to support their hours claimed. The Court has found no reason to believe that the affidavits submitted supporting counsel's

---

**43.** Counsel's travel hours to Wilmington for the second trial are likewise fully compensable.

documentation of hours were not truthful, accurate or complete. Contrary to defendants' implied assertions, reports providing minute-by-minute details of an attorney's day are not required. Records that clearly indicate the amount of time spent and the subject matter involved, such as those provided in this case, are all that are necessary to support an award of fees, provided the hours claimed are reasonable in light of the length and complexity of the litigation. *Hensley v. Eckerhart*, 103 S.Ct. at 1939 n. 12; *Williamsburg*, 599 F.Supp. at 517.

Although defendants have contested 45% of plaintiff's hours herein, they have done so in a conclusory fashion, while being well acquainted with the amount of time they had to expend in defending the action and, thus, the amount of time required by plaintiff to prosecute. *See Wolf v. Frank*, 555 F.2d 1213, 1217 (5th Cir.1977); *Perkins v. New Orleans Athletic Club*, 429 F.Supp. 661, 667 (E.D.La.1976). Even a cursory review of the pleadings in this case, the discovery exchanged and the trial testimony makes clear that a vast majority of the time claimed by plaintiff must have been reasonably expended.[44]

 The following tables indicate the total number of hours for which compensation shall be awarded:

| | Pre-Trial #1 | Trial 1 | Post-Trial 1/Pre-Trial 2 | Trial 2 | Post-Trial 2 | Fee [45] Petition |
|---|---|---|---|---|---|---|
| Beaver | 605.8 | 186.3 | 77.8 | 20.5 | 7.8 | 17.1 |
| Richardson | 480.4 | 191.7 | 25.6 | 10.2 | 0 | 2.6 |
| Thompson | 95.9 | 147.0 | 11.4 | 17.0 | 0 | 0 |
| Holt | 51.5 | 5.7 | 10.2 | 0 | 0 | 0 |
| Totals | 1,233.6 | 530.7 | 125.0 | 47.7 | 7.8 | 19.7 |

TOTAL NUMBER OF HOURS BY ATTORNEY

| | | |
|---|---|---|
| Beaver | – | 915.3 |
| Richardson | – | 710.5 |
| Thompson | – | 271.3 |
| Holt | – | 67.4 |
| Total | – | 1,964.5 |

### C. *The Reasonable Hourly Rate*

#### 1. *General Framework*

In *Blum v. Stenson*, 104 S.Ct. at 1547, the Supreme Court ruled that reasonable hourly rates for purposes of § 1988 are to be measured by the "prevailing market rates in the relevant community." Market value is thus the touchstone of the fee inquiry.

44. Although the Court is empowered to do so, it declines to intrude on defense counsel's privacy by requiring a disclosure of their respective hours billed. *Cf. Blowers v. Lawyers Co-op Publishing Co.*, 526 F.Supp. 1324, (W.D.N.Y.1981); *McPherson v. School District #186*, 465 F.Supp. 749, 758–59 (S.D.Ill.1978).

45. § 1988 fees are available to compensate plaintiff's counsel for the preparation and successful litigation of their fee application. *New York State Association for Retarded Children v. Carey*, 711 F.2d at 1148; *Johnson v. University College*, 706 F.2d at 1207; *Copeland v. Marshall*, 641 F.2d at 901; *Young v. Kenley*, 641 F.2d 192, 195 (4th Cir.1981), *cert. denied*, 455 U.S. 961, 102 S.Ct. 1476, 71 L.Ed.2d 681 (1982); *Northcross v. Board of Education of Memphis*, 611 F.2d at 637.

"Prevailing market rates" deemed to be reasonable under § 1988 are "rates ... in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at n. 11. *See also National Association of Concerned Veterans*, 675 F.2d at 1324–25; *Copeland v. Marshall*, 641 F.2d at 892. Other relevant considerations include the time limitations imposed by the case, the amount to be obtained in the litigation, counsel's opportunity costs in pressing the litigation and the undesirability of the case. *Williamsburg*, 599 F.Supp. at 515–16; *Palmer v. Shultz*, 594 F.Supp. 433, 437 (D.D.C.1984); *Redic v. Gary H. Watts Realty Co.*, 586 F.Supp. 699, 700 (W.D.N.C.1984); *Cf. Johnson v. Georgia Highway Express, Inc.* 488 F.2d 714 (5th Cir.1974).[46] *But See Laffey v. Northwest Airlines, Inc.*, 746 F.2d at 24–25 (counsel's established billing rates generally determine hourly rates).

As with the reasonableness of the hours claimed, the burden is on the fee applicant to establish the reasonableness of the hourly rates sought to be applied in the § 1988 fee calculation. Specifically, the fee applicant is required to produce specific evidence of the "prevailing market rate in the relevant community" for the type of work for which he seeks an award. *Blum v. Stenson*, 104 S.Ct. at 1547 n. 11; *National Association of Concerned Veterans*, 675 F.2d at 1325. This may be accomplished through (1) the submission of affidavits reciting the precise fees that counsel with similar qualifications have received in comparable cases;[47] (2) information concerning recent fee awards by courts in comparable cases; and (3) specific evidence of counsel's actual billing practice or other evidence of the actual rate which counsel can command in the market. *Id.* at 1325–26. *See also Ramos v. Lamm*, 713 F.2d at 555.

In addition, in determining the appropriate hourly rate, the Court has considerable discretion to take into account its experience in setting market value rates in prior fee cases, its general knowledge of the fees charged by attorneys in the area, its experience in the practice of law prior to assuming the bench and its familiarity with counsel's performance in the case. *See, e.g., Wojtkowski v. Cade*, 725 F.2d at 131 n. 1 (district court may "bring to bear its knowledge and experience concerning both the cost of attorneys in its market area and the time demands of the particular case); *National Association of Concerned Veterans*, 675 F.2d at 1325 n. 7; *Rybicki v. State Board of Elections of Illinois*, 584 F.Supp. at 863; *Lyons v. Cunningham*, 583 F.Supp. at 1154–55.

Once the fee applicant has provided support for the requested rate, the burden falls to the losing party to go forward with evidence that the rate is erroneous. *National Association of Concerned Veterans*, 675 F.2d at 1326. *See also Blum v. Stenson*, 104 S.Ct. at 1545 and n. 5. When

**46.** In cases involving award of attorney's fees, the Fourth Circuit has held that the guidelines established in *Johnson* must be followed. *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978), *cert. denied*, 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978). However, the utilization of the *Johnson* factors has been modified by the Supreme Court decisions in *Hensley v. Eckerhart, supra* and *Blum v. Stenson, supra*. Thus, most of the *Johnson* factors "are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley*, 103 S.Ct. at 1940 n. 9.

**47.** Generalized and conclusory "information and belief" affidavits from friendly counsel do not suffice. The affidavit should state whether the stated hourly rate is a present or past one, whether the rate is for a specific type of litigation or for litigation in general, and whether the rate is an average one or one specifically for an attorney with a particular type of experience or qualifications. The affidavit should also state the factual basis of the affiant's opinion. The best evidence would be the hourly rate customarily charged by the affiant himself or by his law firm. Alternatively, the affidavit might state that the stated rate is based on the affiant's personal knowledge about specific rates charged by other lawyers or rates for similar litigation.... What is needed are some pieces of evidence that will enable the District Court to make a reasonable determination of the appropriate hourly rate."
*National Association of Concerned Veterans*, 675 F.2d at 1325–26.

the losing party chooses to contest the requested hourly rate, it must do so by specific countervailing evidence. "[I]n the normal case the [opponent] must either acede to the applicant's requested rate or provide specific contrary evidence tending to show that a lower rate would be appropriate." 675 F.2d at 1326.

In the case at bar, plaintiff's counsel request compensation at the following hourly rates:

| | | |
|---|---|---|
| Beaver | – | $125 |
| Thompson | – | $125 |
| Richardson | – | $100 |
| Holt | – | $100 |

In support of this request, counsel have submitted the following materials:

(1) an affidavit, filed March 1, 1985, detailing the trial experience and skills of counsel, the division of responsibility in the case, the requested hourly rate and the fact the request is "within the range of reasonable hourly rates for attorneys with similar background, experience and reputation in matters of complex litigation within the United States District Court for the Eastern District of North Carolina";

(2) an attached memorandum of law discussing in some detail the application of the *Johnson* factors to this litigation; and

(3) four affidavits from local counsel providing prevailing community rate information.

A review of the materials submitted establishes that counsel for plaintiff have met—barely met—the minimum requirements delineated *supra* at 1101–1102, and established by *National Association of Concerned Veterans*. Information regarding counsel's billing practices and awards in similar cases would have been helpful. Additional and more detailed affidavits from local counsel could have been filed. Because of these omissions, the Court must substitute its personal knowledge and experiences in lieu of substantive evidence to a greater degree than it would have hoped.

However, all of this is tempered by the fact that defendants do not object to counsel for plaintiff's requested rates. Thus, under *National Association of Concerned Veterans*, the Court deems defendants to have "acceded" to the applicant's request. The Court is by no means chiding defendants for this decision, for as discussed *infra* plaintiff's request is within the range of "prevailing market rates" for similar work in this community; it is simply noting the lack of opposition to the rate request. Although the Court is not obligated to adopt plaintiff's suggested rates merely because defendants do not oppose the request, *Wojtkowski v. Cade*, 725 F.2d at 130, the effect of the concession is to somewhat lessen plaintiff's overall evidentiary burden to support their request. *See e.g., Merkel v. Scovill, Inc.*, 590 F.Supp. 534–35.

Before applying the above principles to the case *sub judice*, one final procedural matter requires some discussion. Lower federal courts have adopted varying approaches to the question of whether all services rendered in a case by counsel should be valued at the same hourly rate or at varying rates depending on the nature of the work performed (i.e. uniform v. variable rates). Some courts authorize or have utilized different rates for different kinds of work, typically distinguishing between in-court and out-of-court time and primary and secondary legal services. *E.g., Whitley v. Seibel*, 676 F.2d 245, 253 (7th Cir. 1982), *cert. denied* 459 U.S. 942, 103 S.Ct. 254, 74 L.Ed.2d 198 (1982); *Milos v. Sampson*, 675 F.2d at 9; *United Nuclear Corp. v. Cannon*, 564 F.Supp. 581, 589 (D.R.I. 1983); *Langdon v. Drew Municipal Separate School District*, 512 F.Supp. 1131, 1139 (N.D.Miss.1981). On the other hand, some courts have applied, without necessarily mandating, a uniform or flat rate for all services performed by counsel. *White v. City of Richmond*, 713 F.2d 458, 461 (9th Cir.1983); *Maceira v. Pagan*, 698 F.2d 38, 41 (1st Cir.1983); *Bonner v. Coughlin*, 657 F.2d 931, 937 (7th Cir.1981); *Palmer v. City of Chicago*, 576 F.Supp. 252, 255 (N.D.Ill.1983). *Cf. Cohen v. West Haven Board of Police Commissioners*, 638 F.2d at 505 (discretionary with the district court); *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d at 167 (same).

In this case plaintiff's counsel have requested uniform rates and defendants do not oppose the request. Based on previous fee awards issued by this Court and its knowledge of awards issued within the district by Judges Britt, Dupree, Larkins and Boyle, the Court finds that the use of a single average rate for each attorney is customary in this community. In addition, the Court finds that in this case, counsel's knowledge, skills and abilities were as fully engaged in their out-of-court work as they were in-court. *See Maceira v. Pagan*, 698 F.2d at 41. Accordingly, the Court will employ a uniform or flat rate per attorney for this fee award.

### 2. *Determination of Rate*

The Court begins its analysis by turning to a recent North Carolina Bar Association survey of typical hourly rates for lawyers during 1984 to determine the range of rates charged by attorneys in this state.[48] The survey discloses that the typical hourly rates for lawyers during 1984 based on the year of admission to the North Carolina Bar,[49] as applied to plaintiff's counsel, are as follows:

| | | |
|---|---|---|
| Beaver | – | $85[50] |
| Thompson | – | $95[51] |
| Richardson | – | $65[52] |
| Holt | – | $65[53] |

It must be emphasized that these rates are for typical work conducted by attorneys in North Carolina, with absolutely no regard to the type of work performed or the skills required to perform it. Since these rates are "average" in every sense of the word, they are useful only as a starting point for the Court's determination. The Court will now utilize the relevant *Johnson* factors, in light of *Hensley* and *Blum*, to determine whether the claimed rates are reasonable.

### (a) *The reputation and experience of counsel*

The Court is aware that plaintiff's counsel are skilled and experienced trial attorneys, and that they enjoy good reputations within the profession and the public generally.

### (b) *The novelty and difficulty of the questions*

This litigation presented challenging issues of both fact and law. The record reveals its complexity and magnitude.

In a factual sense, the case involved across-the-board challenges to the policies and practices of the F.P.D. Such challenges are rarely successful on the merits. *See Orpiano v. Johnson*, 632 F.2d 1096 (4th Cir.1980); *Turpin v. Mailet*, 619 F.2d 196, 201 (1980). More importantly, it tested the credibility of a number of supervisory officials and police officers within the department. In so doing, the litigation in many respects pitted the plaintiff and his extensive criminal record against the word and reputation of the defendants. Yet, the end result was a determination of this basic issue in favor of plaintiff.

In a legal sense, the law governing § 1983 actions was and is in flux. As this Court stated in its order of July 11, 1984, "neither trial judges nor lawyers are given any simple or *per se* rules to follow in deciding whether a set of facts states an *actionable* constitutional deprivation under 42 U.S.C. § 1983." Order at 8–9. In addition, many evidentiary issues in this case raised difficult questions requiring considerable time and thought by counsel and the court.

In sum, this was a difficult lawsuit. The Court finds that the relevant legal market in this action is complex civil rights litigation and that this market is subject to the same hourly rates that prevail in other complex federal litigation.

---

**48.** "North Carolina Bar Association Economic Survey 1985" at 16–18.

**49.** These figures represent the hourly rate received by the 75th percentile of attorneys in North Carolina with comparable experience.

**50.** Survey at Table 16(f).

**51.** *Id.* at Table 16(h).

**52.** *Id.* at Table 16(c).

**53.** *Id.*

(c) *The skill required to properly perform the legal services rendered*

The suit required skill in a variety of areas: organization, investigation, research, briefing, oral advocacy, and examination of witnesses. Plaintiff's lawyers clearly possessed the necessary skills.

(d) *Counsel's opportunity costs in pressing the instant litigation*

At a minimum, this case required an enormous amount of time that could have been spent on other work. The drain of fiscal and physical resources on counsel's four person law firm, particularly from December, 1984 through February, 1985 was burdensome. The Court has no doubt that clients may have been lost due to an inability to promptly attend to their legal matters during this period of time.

In addition, given the nature of the lawsuit and the identity of the defendants, counsel's state court criminal trial practice probably felt the effects of the decision to accept this case. Human nature being what it is, it is likely that free and open discussion between plaintiff's counsel and some officers of the F.P.D., regarding counsel's state court criminal cases in which they were involved, diminished considerably as this litigation progressed. Mr. Beaver underscores this point in his verified motion of March 1, 1985 when he says "[c]ounsel is well aware [the unpopularity of the case] may continue for some period of time in the future and may greatly effect (sic) our practice, particularly in the State traffic courts in which we all practice." Motion at 11.

Based on the aforesaid, the Court concludes that the preclusion of employment by plaintiff's counsel due to the acceptance of this case was substantial.

(e) *The attorney's expectations at the onset of trial.*

When this case initially came before the Court, the Court's expectation of plaintiff's success at trial was not high. At best, with Spell's criminal record, counsel's expectation at the outset of the litigation for even very limited monetary success could not have been better than even odds and no reasonable person could have predicted the results actually obtained. The risk in accepting this case was substantial. See *infra* at 1107–11.

(f) *The time limitation imposed by the client or circumstances*

No time limitations were imposed by the client, but fairly strict scheduling limitations were imposed by the Court in December and January of 1985 as well as at trial. During this period, counsel were constantly working under the pressures of time.

(g) *The undesirability of the case within the community*

This was an extremely unpopular case for counsel to accept. As counsel note in their motion of March 1, "[b]ecause [the case was undesirable and unpopular], all of plaintiff's counsel have undergone great stress and a good deal of public and private criticism." Motion at 11. As indicated by the number and content of news reports and articles concerning the case, the Court has no reason to doubt the veracity of counsel's statement. The pressures on counsel, both in-court and out-of-court, were substantial and they should be compensated accordingly.

(h) *Awards in similar cases*

Counsel's request is in line with other awards which have been made in recent years in similar cases, albeit on the high side of the scale.[54] *E.g., Williamsburg,* 599 F.Supp. at 515–16 ($100 to $125 per hour); *Vaughns v. Board of Education of Prince George's County,* 598 F.Supp. 1262, 1282 (D.Md.1984) ($75 to $175 per hour); *Redic v. Gary H. Watts Realty Co.,* 586 F.Supp. at 703 ($100 per hour); *Rybicki v. State Board of Elections of Illinois,* 584 F.Supp. at 858–60 ($100 to $175 per hour); *May v. Cooperman,* 582 F.Supp. 1458, 1460 (D.N.J.1984) ($85 to $125 per hour); *Arizona v. Maricopa County Medical Society,* 578 F.Supp. 1262, 1271 (D.Ariz.1984) ($70 to $160 per hour); *Coble v. Texas Department of Corrections,* 568 F.Supp. 410, 413 (S.D.Tex.1983) ($100 to $125 per hour); *White v. City of Richmond,* 559 F.Supp.

**54.** Because the rates requested and approved *infra* are substantial, any enhancement allowed should and will be reduced accordingly.

127, 132 (N.D.Calif.1982), *aff'd.* 713 F.2d 458 (9th Cir.1983) ($115 to $120 per hour); *Tasby v. Wright,* 550 F.Supp. 262, 280–82 (N.D.Tex.1982) ($60–175 per hour); and *Rajender v. University of Minnesota,* 546 F.Supp. at 168 ($80 to $125 per hour).[55]

Although the Court is unaware of any award of fees within this district within the last two years for complex civil rights litigation, plaintiff's counsel has attached four (4) affidavits from members of the Raleigh and Fayetteville bar indicating that in similar cases they, or their colleagues, would charge the same rates requested by plaintiff's counsel.[56] The affidavits are uncontroverted.

3. *Conclusion—Approved Hourly Rates*

 Bearing in mind all of the above factors, as well as the outcome of the litigation, the Court finds that the hourly rates proposed by plaintiff's counsel are at the apogee of the range of rates that prevail in this district for lawyers of comparable qualifications and experience who handle cases of this sort. The Court acknowledges that the rates are generous, *see* n. 54 *supra,* however, counsel by evidence in this fee litigation and through their performance during the litigation, have demonstrated their entitlement to the requested rates. In short, the Court concludes that the record contains sufficient evidence that the rates selected are within those that prevail in this community for similar work. The lodestar rates therefore are as follows:

| | | |
|---|---|---|
| Beaver | — | $125 per hour |
| Thompson | — | $120 per hour [57] |
| Richardson | — | $100 per hour |
| Holt | — | $100 per hour |

### D. *Final Lodestar Award*

PHASE I [58]

| | Compensable Hours | Hourly Rate | Amount Awarded |
|---|---|---|---|
| Beaver | 605.8 | $125 | $ 75,725.00 |
| Richardson | 480.4 | $100 | $ 48,040.00 |
| Thompson | 95.9 | $120 | $ 11,508.00 |
| Holt | 51.5 | $100 | $ 5,150.00 |
| Totals | 1,233.6 | | $140,423.00 |

PHASE II

| | Compensable Hours | Hourly Rate | Amount Awarded |
|---|---|---|---|
| Beaver | 186.3 | $125 | $ 23,287.50 |
| Richardson | 191.7 | $100 | $ 19,170.00 |
| Thompson | 147.0 | $120 | $ 17,640.00 |
| Holt | 5.7 | $100 | $ 570.00 |
| Totals | 530.7 | | $ 60,667.50 |

**55.** Since these cases are, with one exception, not from districts within this state, they are cited for the sole purpose of establishing that the rates requested are consistent with those approved in many sections of the country for complex federal litigation, particularly civil rights actions.

**56.** In this regard, the conclusory affidavit of Roger Smith is of minimal value.

**57.** The Court, in its discretion, has employed a rate of $120 for Mr. Thompson rather than his requested $125 because it concludes lead counsel should be compensated at a slightly higher hourly rate than other counsel, given the additional pressures and responsibilities of that position.

**58.** For the necessity in calculating the lodestar by phases, *see infra* at 1111.

### PHASE III

| | Compensable Hours | Hourly Rate | Amount Awarded |
|---|---|---|---|
| Beaver | 77.8 | $125 | $ 9,725.00 |
| Richardson | 25.6 | $100 | $ 2,560.00 |
| Thompson | 11.4 | $120 | $ 1,368.00 |
| Holt | 10.2 | $100 | $ 1,020.00 |
| Totals | 125.0 | | $ 14,673.00 |

### PHASE IV

| | Compensable Hours | Hourly Rate | Amount Awarded |
|---|---|---|---|
| Beaver | 20.5 | $125 | $ 2,562.50 |
| Richardson | 10.2 | $100 | $ 1,020.00 |
| Thompson | 17.0 | $120 | $ 2,040.00 |
| Holt | 0 | -- | $ -- |
| Totals | 47.7 | | $ 5,622.50 |

### PHASE V

| | Compensable Hours | Hourly Rate | Amount Awarded |
|---|---|---|---|
| Beaver | 7.8 | $125 | $ 975.00 |
| Richardson | 0 | -- | -- |
| Thompson | 0 | -- | -- |
| Holt | 0 | -- | $ -- |
| Totals | 7.8 | | $ 975.00 |

### PHASE VI

| | Compensable Hours | Hourly Rate | Amount Awarded |
|---|---|---|---|
| Beaver | 17.1 | $125 | $ 2,137.50 |
| Richardson | 2.6 | $100 | $ 260.00 |
| Thompson | -- | -- | $ -- |
| Holt | -- | -- | -- |
| Totals | 19.7 | | $ 2,397.50 |

### SUMMARY OF TOTAL LODESTAR AWARD

| | Compensable Hours | Hourly Rate | Amount Awarded |
|---|---|---|---|
| Beaver | 915.3 | $125 | $114,412.50 |
| Richardson | 710.5 | $100 | $ 71,050.00 |
| Thompson | 271.3 | $120 | $ 32,556.00 |
| Holt | 67.4 | $100 | $ 6,740.00 |
| Totals | 1,964.5 | | $224,758.50 |

## V. ENHANCEMENT OF THE LODESTAR

When a fee applicant has carried the burden of showing that the requested rate and number of hours are reasonable, the resulting product may properly constitute full and adequate compensation for counsel. *Blum v. Stenson*, 104 S.Ct. at 1548. Nevertheless, "[t]he product of reasonable hours times a reasonable rate does not end the inquiry." *Hensley v. Ecker-*

*hart,* 103 S.Ct. at 1940. Although the lodestar often compensates counsel adequately for their time, *Copeland v. Marshall,* 641 F.2d at 894, it may be adjusted upward to reflect a number of factors peculiar to the lawsuit. Two broad categories of adjustments may be made: (1) "contingency" adjustments: compensation for the risk of not prevailing and thus not recovering a fee and (2) "quality" adjustments: compensation for exceptional representation in combination with exceptional success. *Hensley v. Eckerhart,* 103 S.Ct. at 1940; *Freeman v. Motor Convoy, Inc.,* 700 F.2d 1339, 1357 (11th Cir.1983); *Maciera v. Pagan,* 698 F.2d at 41; *National Association of Concerned Veterans,* 675 F.2d at 1328–29; *Copeland v. Marshall,* 641 F.2d at 892–94; *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp,* 540 F.2d at 117–18; *Merkel v. Scovill, Inc.,* 590 F.Supp. at 535–36. *See also Blum v. Stenson,* 104 S.Ct. at 1548–50 and n. 17 as well as at 1551 (Brennan & Marshall, JJ., concurring).

■ Lodestar adjustments are not bonuses or rewards in excess of counsel's deserved compensation, but are an "attempt to calculate more precisely the market value of the services provided by the attorney." *Alabama Power Co. v. Gorsuch,* 672 F.2d 1, 6 n. 28 (D.C.Cir.1982). Plaintiff, of course, bears the burden of justifying any increases sought by identifying the specific circumstances of the case that warrant the proposed enhancement. *National Association of Concerned Veterans,* 675 F.2d at 1328.[59]

In this case, plaintiff seeks a multiplier based on both contingency and quality considerations, leaving the actual award in the discretion of the Court. Defendants oppose any adjustment to the lodestar. For the reasons that follow, the Court concludes that counsel's award should be increased by applying a multiplier of 1.5 as a contingency adjustment.

### A. Contingency Adjustment

In *Blum v. Stenson, supra,* the Supreme Court made it clear that factors such as the complexity of the litigation, novelty of the issues, skill required to litigate the action and undesirability of the case do not provide an independent basis for enhancing the lodestar. 104 S.Ct. at 1548–50. Such factors should instead be reflected in the hourly rate used to establish the basic lodestar award. *Id.* However, *Blum* does permit an upward adjustment "in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged and that the success was 'exceptional.' " *Id.* at 1549 citing *Hensley v. Eckerhart,* 103 S.Ct. at 1940.

In addition, *Blum* leaves open the possibility that the risks assumed by counsel in taking a case can be a ground for enhancement. *Id.* at 1542 and 1550 n. 17.[60] This proposition is supported by the specific language of Justice Brennan's concurring opinion in which he states, "the risk of not prevailing and therefore the risk of not recovering any attorney's fees, is a proper

---

**59.** The Supreme Court clearly intended in *Blum v. Stenson, supra,* to limit upward adjustments to those cases in which multiplying the reasonable hourly rate times the hours reasonably expended does not result in an adequate and just fee. The presumption is that the product resulting from the claimed rate and hours is reasonable. The burden of proving that the product is not sufficient and that an upward adjustment is appropriate is on the fee applicant. 104 S.Ct. at 1548. The Court may, of course, take into account its informed observations of counsel and the nature of the litigation in determining whether enhancement is warranted.

**60.** *Pre-Blum* cases so holding are legion. *E.g., Gabriele v. Southworth,* 712 F.2d 1505 (1st Cir. 1983); *Johnson v. University College,* 706 F.2d at 1210; *Freeman v. Motor Convoy, Inc.,* 700 F.2d at 1357; *Louisville Black Police Officers v. City of Louisville,* 700 F.2d at 279; *Graves v. Barnes,* 700 F.2d 220, 221–24 (5th Cir.1983); *National Association of Concerned Veterans,* 675 F.2d at 1327; *Copeland v. Marshall,* 641 F.2d at 892–93; *Schneider v. City of Atlanta,* 628 F.2d 915, 920 (5th Cir.1980); *Northcross v. Board of Education of Memphis,* 611 F.2d at 638–39.

basis on which a district court may award an upward adjustment to an otherwise compensatory fee." 104 S.Ct. at 1550.

Proceeding in light of *Blum,* a number of lower federal courts have awarded contingency or risk enhancements. *E.g., Craik v. Minnesota State University Board,* 738 F.2d at 350 51; *Akron Center for Reproductive Health v. City of Akron,* 604 F.Supp. 1275, 1293 (N.D.Ohio 1985); *Williamsburg,* 599 F.Supp. at 519–21; *Vaughns v. Board of Education of Prince George's County,* 598 F.Supp. at 1287; *Palmer v. Shultz,* 594 F.Supp. at 440–41; *Coleman v. Block,* 589 F.Supp. 1411, 1421–22 (D.N.C.1984); *Merkel v. Scovill, Inc.,* 590 F.2d at 535–37; *Redic v. Gary H. Watts Realty Co.,* 586 F.Supp. at 703–04.[61]

Successful enforcement of civil rights depends upon the willingness of capable attorneys to accept cases based on contingent fees. It is unlikely that skilled counsel will accept such cases if the fees available upon prevailing are strictly limited to the regular hourly rate. *See Yates v. Mobile County Personnel Board,* 719 F.2d 1530, 1534 (11th Cir.1983); *Williamsburg,* 599 F.Supp. at 520. *Accord, Copeland v. Marshall,* 641 F.2d at 892; *Vulcan Society v. Fire Department of White Plains,* 533 F.Supp. at 1065. The prevailing market rate is generally based on what an attorney in private practice charges his clients. That rate reflects the hope that counsel will be paid for his hours expended on the case, regardless of the outcome. The prevailing market rate, therefore, is essentially based on the reasonable assumption of probable payment. *Williamsburg,* 599 F.Supp. at 520.

By the same token, when counsel in private practice anticipates that he will only be paid if his client prevails, he ordinarily adjusts his rates upward to counterbalance the risk involved. *Id.* Such upward adjustment "is neither less nor more appro-

priate in civil rights litigation than in personal injury cases. The standard of compensation must enable counsel to accept apparently just causes without awaiting sure winners." *Jones v. Diamond,* 636 F.2d 1364, 1382 (5th Cir.) (en banc), *cert. dismissed sub nom. Ledbetter v. Jones,* 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033 (1981).[62]

In sum, lawyers who are to be compensated only if they ultimately prevail expect and are entitled to be paid more when successful than counsel who are assured of compensation, regardless of the result. *Id., Knighton v. Watkins,* 616 F.2d 795, 800–01 (5th Cir.1980). *Accord Freeman v. Motor Convoy, Inc.,* 700 F.2d at 1339. The upward adjustment "compensate[s] for the risk that the lawsuit would be unsuccessful and that no fee at all would be obtained." *Copeland v. Marshall,* 641 F.2d at 892. Otherwise, competent counsel, particularly solo practitioners or those associated with a small firm, as in this case, would find it impossible to undertake a civil rights case in which the risk of not prevailing was significant. Proof that counsel assumed this risk supports an enhanced award. *Merkel v. Scovill, Inc.,* 590 F.Supp. at 536. *See also Craik v. Minnesota State University Board,* 738 F.2d at 350; *Northcross v. Board of Education of Memphis,* 611 F.2d at 638; *Blatt v. Dean Witter Reynolds Inter-Capital, Inc.,* 566 F.Supp. 1294, 1298 (S.D.N.Y.1983); *DeSimone v. Industrial Bio-Test Labs, Inc.,* 83 F.R.D. 615, 622 (S.D.N.Y.1979).

In determining whether to assess a contingency multiplier, this Court adopts the analysis first established by the Third Circuit in *Lindy Brothers Builders v. American Radiator & Standard Sanitary Corp,* 540 F.2d at 117:

> Under the rubric of "the contingent nature of success" the district court

---

**61.** In fact, this Court is unaware of any decision, since *Blum,* which has ruled that upward adjustments to the lodestar to account for risk are unavailable as a matter of law.

**62.** The Court's conclusion is supported by the purposes of the Act: to ensure "effective access

to the judicial process," H.Rep. No. 94–1558 at 1 and "to attract competent counsel," S.Rep. No. 94–1011 at 6 *reported in* 1976 U.S.Code & Cong. & Ad.News 5908, 5913. *See Merkel v. Scovill, Inc.,* 590 F.Supp. at 636.

should appraise the professional burden undertaken—that is, the probability or likelihood of success, viewed at the time of filing suit. The court may increase the amount established in the computation of the "lodestar" as a reasonable fee on the basis of a careful evaluation of the following factors:

1. Analysis of plaintiff's burden. Subsumed in this category are the following considerations: (a) the complexity of the case,—legally and factually; (b) the probability of defendant's liability,—whether it is clear or dubious; whether it has been previously suggested by other civil or criminal proceedings; whether it is asserted under existing case law or statutory interpretation, or is advanced as a novel theory; (c) an evaluation of damages, —whether the claims would be difficult or easy to prove.

2. Risks assumed in developing the case. This category subsumes consideration of: (a) the number of hours of labor risked without guarantee of remuneration; (b) the amount of out-of-pocket expenses advanced for processing motions, taking depositions, etc.; (c) the development of prior expertise in the particular type of litigation; recognizing that counsel sometimes develop, without compensation, special legal skills which may assist the court in efficient conduct of the litigation, or which may aid the court in articulating legal precepts and implementing sound public policy.

3. The delay in receipt of payment for services rendered.

*See also Graves v. Barnes,* 700 F.2d 220, 222 (5th Cir.1983); *Arizona v. Maricopa County Medical Society,* 578 F.Supp. at 1277–78. Application of the *Lindy* guidelines follows.[63]

In the case at bar, there was a significant possibility that plaintiff would not prevail. The issues raised were complex, the law in flux and the facts strongly disputed. *See supra* at 1103–04. The litigation

was hard-fought and required resilience, persistence and patience.

Complexity of legal and factual issues presents problems going beyond late nights at the office. Unsettled law and closely contested facts involving numerous credibility determinations magnifies the risk of an unsuccessful lawsuit because it increases the likelihood of appeal, adverse findings of fact and changes in controlling law. *Palmer v. Schultz,* 594 F.Supp. at 441. "Complicated and wide-ranging claims raise the possibility of a smoking gun in the files pointing directly at plaintiff and the certainty of counsel's 'substantial investment ... over an extended period.'" *Id.* (citation omitted). *See also Louisville Black Police Officers v. City of Louisville* 700 F.2d at 280; *Rajender v. University of Minnesota,* 546 F.Supp. at 169–70.

When counsel agreed to undertake this lawsuit, they did so with the understanding that they would not be compensated for their labor unless they ultimately prevailed on the merits and that, in any event, they would receive little or no payment until the case was concluded.[64] At the outset, counsel must have known the litigation would require, as it did, a massive expenditure of time and energy with the very real possibility that no fee at all would be obtained if a jury simply ended up believing the testimony of defendant McDaniel over the plaintiff. The outcome of this case was far from preordained and the risk went beyond the normal contingent fee situation. *See Craik v. Minnesota State University Board,* 738 F.2d at 350.

In addition, the relative financial condition of the parties must be taken into account in assessing the risk of litigation. Counsel for plaintiff knew they were facing a governmental defendant with enormous fiscal and physical resources to defend itself and all other defendants in the case. Plaintiff's lawyers had no built-in

---

**63.** The Court has reviewed these factors, in light of the documentation incorporated in counsel for plaintiff's fee application and the Court's own familiarity with the litigation.

**64.** Due to plaintiff's financial status and circumstances, Spell, through his father, has only been able to contribute $600.00 to counsel to offset the costs and expenses of this litigation. Plaintiff's March 1, 1985 Motion at 7.

resources as did defense counsel and had to conduct their own extensive investigation and discovery at the outset of their representation, not knowing how the critical facts would develop. Defendants vigorously and unremittingly litigated every aspect of this case. No issue was easily won and precious few conceded.

Thus, counsel for plaintiff understood from the beginning that they would be met with a maximum effort and that nothing less than the same would be required of them. Acceptance of the case obviously required the commitment of extraordinary time and resources, particularly in view of the firm's small size. This commitment, not over the course of many years, but over the concentrated course of one year, constitutes an "exceptional" circumstance in the context of the risk involved to counsel and their careers. *See id.* at 350–51; *White v. City of Richmond,* 713 F.2d at 462; *Vaughn v. Board of Education of Prince George's County,* 598 F.Supp. at 1286; *Palmer v. Shultz,* 594 F.Supp. at 441; *Rajender v. University of Minnesota,* 546 F.Supp. at 169.

Finally, the Court notes that in establishing the lodestar, *Johnson* factor number (6), whether the fee is fixed or contingent, was not specifically considered in the analysis. 488 F.2d at 718. The court is cognizant of the relationship between the difficulty of the case and the lodestar, *see Donnell v. United States,* 682 F.2d 240, 253–54, but when a case involves complex issues of law and highly uncertain issues of fact, these considerations must affect the Court's decision on the entitlement to and size of a risk adjustment. *See National Association of Concerned Veterans,* 675 F.2d at 1328.

▉ Based on the foregoing, the Court finds that an upward adjustment of 1.5 is appropriate for this case. Such a multiplier is consistent with contingency increases granted in similar cases. *See e.g., Craik v. Minnesota State University Board,* 738 F.2d at 350 (1.25 multiplier); *Yates v. Mobile County Personnel Board,* 719 F.2d at 1534 (1.35 multiplier); *Graves v. Barnes,* 700 F.2d at 224 (2.0 multiplier); *Louisville*

*Black Police Officers Organization, Inc. v. City of Louisville,* 700 F.2d at 280 (1.33 multiplier); *Maceira v. Pagan,* 698 F.2d at 41 (1.25 multiplier); *Akron Center for Reproductive Health v. City of Akron,* 604 F.Supp. at 1293 (1.4 multiplier); *Williamsburg,* 599 F.Supp at 521 (1.25 multiplier); *Society for Good Will to Retarded Children v. Cuomo,* 103 F.R.D. 168 (E.D.N.Y. 1984) (1.25 multiplier); *Palmer v. Shultz,* 594 F.Supp at 442 (1.20 multiplier), *Redick v. Gary H. Watts Realty Co.,* 586 F.Supp. at 704 (1.25 multiplier); *Arizona v. Maricopa County Medical Society,* 578 F.Supp. at 1279 (1.4 multiplier); *White v. City of Richmond,* 559 F.Supp. at 134, *aff'd* 713 F.2d at 462 (1.5 multiplier); *Rajender v. University of Minnesota,* 546 F.Supp. at 170 (2.0 multiplier); *Vulcan Society v. Fire Department of White Plains,* 533 F.Supp. at 1065 .(1.5 multiplier); *EEOC v. Sage Realty Corp,* 521 F.Supp. at 274 (1.35 multiplier).

However, no multiplier will be applied to any hours for Phases III–VI. Once the first jury returned its verdict as to liability, plaintiff clearly became the prevailing party and with compensation guaranteed, the contingency risk factor ceased to exist. *See Northcross v. Board of Education of Memphis,* 611 F.2d at 638; *Williamsburg,* 599 F.Supp. at 521 n. 12; *Vulcan Society v. Fire Department of White Plains,* 533 F.Supp. at 1066. Calculation of the 1.5 contingency adjustment for Phases I and II can be found at the end of Section IV of this opinion, *infra* at 1111–12.

### B. *Quality Adjustment*

▉ An upward adjustment for quality is appropriate when counsel (1) perform exceptionally well and (2) obtain an exceptional result. *Blum v. Stenson,* 104 S.Ct. at 1549; *Hensley v. Eckerhart,* 103 S.Ct. at 1940; *National Association of Concerned Veterans,* 675 F.2d at 1329. This adjustment is not merited simply because counsel competently pursued the litigation to a successful conclusion, *Donnell v. United States,* 682 F.2d at 255, or obtained a large dollar recovery, *Copeland v. Marshall,* 641 F.2d at 894, but is appropri-

ate only in those rare instances where counsel's performance is not accurately reflected in the lodestar calculation. *Blum v. Stenson, supra.* The Court finds that counsel's performance and the results obtained are accurately reflected in the lodestar calculation. Accordingly, no further adjustment is warranted.

### C. *Final Fee Award*

The following tables demonstrate the final fee award calculations:

#### PHASE I

| | Lodestar Award | + | 1.5 Contingency Multiplier | = | Total Award |
|---|---|---|---|---|---|
| Beaver | $ 75,725.00 | + | $37,862.50 | = | $113,587.50 |
| Richardson | $ 48,040.00 | + | $24,020.00 | = | $ 72,060.00 |
| Thompson | $ 11,508.00 | + | $ 5,754.00 | = | $ 17,262.00 |
| Holt | $ 5,150.00 | + | $ 2,575.00 | = | $ 7,725.00 |
| Totals | $140,423.00 | + | $70,211.50 | = | $210,634.50 |

#### PHASE II

| | Lodestar Award | + | 1.5 Contingency Multiplier | = | Total Award |
|---|---|---|---|---|---|
| Beaver | $ 23,287.50 | + | $11,643.75 | = | $ 34,931.25 |
| Richardson | $ 19,170.00 | + | $ 9,585.00 | = | $ 28,755.00 |
| Thompson | $ 17,640.00 | + | $ 8,820.00 | = | $ 26,460.00 |
| Holt | $ 570.00 | + | $ 285.00 | = | $ 855.00 |
| Totals | $ 60,667.50 | + | $30,333.75 | = | $ 91,001.25 |

#### PHASE III

| | Lodestar Award |
|---|---|
| Beaver | $ 9,725.00 |
| Richardson | $ 2,560.00 |
| Thompson | $ 1,368.00 |
| Holt | $ 1,020.00 |
| Total | $ 14,673.00 |

#### PHASE IV

| | Lodestar Award |
|---|---|
| Beaver | $ 2,562.50 |
| Richardson | $ 1,020.00 |
| Thompson | $ 2,040.00 |
| Holt | —— |
| Total | $ 5,622.50 |

#### PHASE V

| | Lodestar Award |
|---|---|
| Beaver | $ 975.00 |
| Richardson | —— |
| Thompson | —— |
| Holt | —— |
| Total | $ 975.00 |

PHASE VI

| | Lodestar Award |
|---|---|
| Beaver | $ 2,137.50 |
| Richardson | 260.00 |
| Thompson | — |
| Holt | — |
| Total | $ 2,397.50 |

SUMMARY OF TOTAL AWARD

| | Lodestar | | 1.5 Contingency Multiplier | | Total Award |
|---|---|---|---|---|---|
| Beaver | $114,412.50 | + | $ 49,506.25 | = | $163,918.75 |
| Richardson | $ 71,050.00 | + | $ 33,605.00 | = | $104,655.00 |
| Thompson | $ 32,556.00 | + | $ 14,574.00 | = | $ 47,130.00 |
| Holt | $ 6,740.00 | + | $ 2,860.00 | = | $ 9,600.00 |
| Totals | $224,758.50 | + | $100,545.25 | = | $325,303.75 |

From the above total of 325,303.75 the sum of $652.50 is subtracted, this sum already having been awarded plaintiff's counsel as a sanction by Magistrate Dixon for defendants' frivolous pre-trial # 2 contentions. *See* Orders of April 25 and May 29, 1985. Accordingly, IT IS HEREBY ORDERED that counsel for plaintiff's motion for an award of attorney's fees, pursuant to 42 U.S.C. § 1988, is GRANTED in the total amount of $324,651.25

## VI. COSTS AND LITIGATION EXPENSES

Plaintiff's counsel seeks to recover the following costs and expenses incurred during the period of time for which attorney's fees are sought by their present motion:

| | |
|---|---|
| * Deposition Fees (to Hasgrove and Dickinson) | $ 50.00 |
| Deposition Fees (to Starkings Court Reporting) | $ 472.10 |
| Expert Witness Fee (Dr. George Kirkham) | $ 5,400.00 |
| Expert Witness Fee (Dr. Stephen Rochman) (court appearances at both trials) | $ 1,534.80 |
| Expert Witness Fee (Dr. Edward Proctor, Jr.) | $ 750.00 |
| * Filing Fee | $ 60.00 |
| Jury Exhibit Notebook | $ 160.00 |
| Jury Survey (fee to juristic psychologist) | $ 550.00 |
| Lodging and Travel Expenses for Dr. Kirkham | $ 733.28 |
| * Paternity Test | $ 276.00 |
| Photocopying (39,000 copies) | $ 8,266.22 |
| * Photographs | $ 89.45 |
| Postage | $ 32.63 |
| Purchases of Exhibits (Kel-Lite, Convoy and Slapstick) | $ 75.09 |
| * Service Fees for Sheriff | $ 24.00 |
| Service of Subpoenas by Third Party | $ 85.00 |
| * Transcript (partial) of Witness' Testimony at First Trial for Second Trial | $ 172.50 |
| Travel Expenses of Counsel | $ 890.83 |
| * Witness Fees | $ 120.00 |
| Total | $19,741.90 [65] |

Defendants do not object to any of the items marked with an asterisk *, thus, plaintiff's motion for these costs and expenses in the amount of $1,214.05 is GRANTED. All of the remaining items are objected to in whole or in part on the grounds that they are (1) excessive or (2) beyond the scope of taxable costs pursuant to 28 U.S.C. § 1920. After a brief discussion of the legal standards and framework for determining costs and litigation expenses, the Court will rule on each item *seriatim.*

---

**65.** Counsel's bill of costs and expenses are located in submissions filed March 1, April 9, April 22 and April 29, 1985.

There are two separate sources of authority for an award of costs and expenses to the prevailing party in civil rights litigation. First, the traditional authority for recovery of costs is 28 U.S.C. § 1920, which is limited in its scope to necessary costs incurred by the party that are paid to a third party, including docket fees, marshal fees, deposition expenses and witness expenses.

Second, and more importantly, the lower federal courts have, with very few exceptions, concluded that the authority granted in 42 U.S.C. § 1988 to award a "reasonable attorney's fee" includes the authority to award reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client in the course of providing legal services. *See, e.g., Henry v. Webermeier*, 738 F.2d at 192; *Dowdell v. City of Apopka*, 698 F.2d 1181, 1188–89 (11th Cir.1983); *Wheeler v. Durham City Board of Education*, 585 F.2d 618, 622 (4th Cir.1978); *Northcross v. Board of Education of Memphis*, 611 F.2d at 639; *Fairley v. Patterson*, 493 F.2d 598, 606 n. 11 (5th Cir.1974). *See also* Bartell, *Taxation of Costs and Awards of Expenses in Federal Court*, 101 F.R.D. 553, 589–96 (1984).

The issue of which expenses are properly chargeable to the defendants under § 1988 is not decided by reference to any pre-determined list of items, as under 28 U.S.C. § 1920. It is governed by the purposes of the applicable statute and the nature and scope of the litigation at bar. *Dowdell*, 698 F.2d at 1189.

In this case, the purpose of the Act is to ensure the effective enforcement of the civil rights laws, by making it financially feasible to privately litigate civil rights violations. *Id.* The Act essentially shifts the costs of litigation from the victim to the violator. As such, reasonable attorney's fees under the Act must include reasonable expenses because

> attorneys' fees and expenses are inseparably intertwined as equally vital components of the cost of litigation. The factually complex and protracted nature of civil rights litigation frequently makes it necessary to make sizeable out-of-pocket expenditures which may be as essential to success as the intellectual skills of the attorneys.

*Id.* at 1190. *See also Wheeler*, 585 F.2d at 623–24.

Moreover, refusal to compensate civil rights plaintiffs for their out-of-pocket costs and expenses would clearly not effectuate the policies underlying the Act: "to encourage individuals to seek vindication of their rights, to ensure individuals who prevail in such litigation will be fully compensated for their efforts and to inspire competent counsel to accept representation in such cases." *Laffey v. Northwest Airlines, Inc.*, 572 F.Supp. at 382. *See also Dowdell*, 698 F.2d at 1190. Obviously, if the real income of civil rights litigation is decreased through the absorption of costs generally billable to clients in other types of cases, the market result will be to channel competent counsel to more remunerative litigation. *Id.*

Therefore, this Court adopts the standard set forth in *Dowdell, supra,* that "with the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation ... may be taxed as costs under Section 1988." 698 F.2d at 1192; *See also Wheeler, supra; Jones v. Diamond*, 636 F.2d at 1382; *Williamsburg*, 599 F.Supp. at 522; *Wuori v. Concannon*, 551 F.Supp. at 200–01. This standard necessarily involves a case-by-case balancing of what is appropriate in the context of the nature of the litigation and the climate in which it is conducted. *Id.*

Applying the above principles to the case at bar, the Court holds as follows:

### A. *Deposition Fees to Hasgrove and Dickinson*

Plaintiff's claim for $50.00 as a charge incurred in the unsuccessful scheduling of an out-of-state deposition is DENIED. *See Feher v. Department of Labor & Industrial Relations* 561 F.Supp. 757, 768 (D.Hawaii 1983) (denying costs of depositions because plaintiff made no showing that they

were reasonably necessary); *Neely v. General Electric Co.,* 90 F.R.D. 627, 630 (N.D. Ga.1981) (same); *Pate v. General Motors Corp.,* 89 F.R.D. 342 (N.D.Miss.1981) (same).

### B. *Jury Exhibit Notebooks*

Plaintiff's claim of $160.00 for purchase of jury exhibit notebooks is reasonable and is ALLOWED. *See Pinshaw v. Monk,* 565 F.Supp. 44, 46 (D.Mass.1983); *Connor v. Winter,* 519 F.Supp. 1337, 1345–46 (S.D. Miss.1981).

### C. *Jury Survey*

Plaintiff's claim for $550.00 for a survey conducted by their juristic pyschologist is DENIED. First, the Court finds such surveys of questionable value. Second, this expense was discretionary with plaintiff's counsel and defendants should not be required to pay for it. *See Shakey's Inc v. Covalt,* 704 F.2d 426, 437 (9th Cir.1983); *Jones v. Diamond,* 636 F.2d at 1382; *Rybicki v. Board of Elections of Illinois,* 584 F.Supp. at 866.

### D. *Photocopying*

Under the circumstances of this case, plaintiff's claim of $8,266.22 for photocopying is ALLOWED. Over 14,000 F.P.D. internal documents were copied by counsel during discovery. Twenty-eight (28) juror notebooks were filled with documentary exhibits at the first trial, not to mention notebooks for the Court, counsel and opposing counsel. Thousands of pages of additional materials and pleadings in the case must reasonably have been copied and re-copied. Accordingly, the Court finds plaintiff's line-item request necessary, reasonable and not excessive. *See Dowdell,* 698 F.2d at 1191–92; *Northcross v. Board of Education of Memphis,* 611 F.2d at 639–40; *Wheeler,* 585 F.2d at 623–24; *Delaware Valley Citizens' Council for Clean Air v. Pennsylvania,* 581 F.Supp. at 1432; *Kelley v. Metropolitan County Board of Education,* 558 F.Supp. 468, 479 (M.D.Tenn.1983); *Wuori v. Concannon,* 551 F.Supp. at 200–01; *Crowe v. Lucas,* 479 F.Supp. 1258, 1263 (N.D.Miss.1979).

### E. *Postage*

Plaintiff's claim of $32.63 for postage is reasonable and is ALLOWED. *See Dow-* *dell,* 698 F.2d at 1192; *Miller v. Carson,* 628 F.2d 346, 349 (5th Cir.1980); *Kelley,* 558 F.Supp. at 479; *McPherson v. School District No. 186,* 465 F.Supp. 749, 763–64 (N.D.Ill.1978).

### F. *Purchases of Exhibits*

Plaintiff's claim for $75.09 for the purchase of *exhibits* is reasonable and is ALLOWED. *See Nissho-Iwai Co. v. Occidental Crude Sales, Inc.,* 729 F.2d 1530, 1553 (3d Cir.1984); *Wahl v. Carrier Manufacturing Co.,* 511 F.2d 209, 217 (7th Cir. 1975); *Rosebrough Monument Co. v. Memorial Park Cemetery Assoc.,* 572 F.Supp. 92, 94 (E.D.Mo.1983), *aff'd* 736 F.2d 441 (8th Cir.1984); *Pinshaw v. Monk,* 565 F.Supp. at 46.

### G. *Service of Subpoenas by Third Party*

Plaintiff's claim of $85.00 for service of subpoenas and collating jury exhibits by a third party is DENIED. This cost, although not unreasonable, should simply be absorbed as part of the firms' overhead. *See Reid v. State of New York,* 584 F.Supp. 461, 462 (S.D.N.Y.1984); *Society for Good Will to Retarded Children v. Cuomo,* 574 F.Supp. at 1002.

### H. *Travel Expenses of Counsel*

Plaintiff's claim of $890.83 for travel expenses to and from Wilmington for hearings and trial, as well as for Mr. Beaver's Florida trip to meet with Dr. Kirkham, is reasonable and is ALLOWED. *See Redding v. Fairman,* 717 F.2d 1105, 1119 (7th Cir.1983), *Palmigiano v. Garrahy,* 707 F.2d 636, 637 (1st Cir.1983); *Dowdell,* 698 F.2d at 1192; *Wheeler,* 585 F.2d at 623–24; *Kelley,* 585 F.Supp. at 479; *Wuon v. Concannon,* 551 F.Supp. at 200–01, *Connor v. Winter,* 519 F.Supp. at 1345–46. *Cf. Henry v. Webermeier,* 738 F.2d at 194.

### I. *Expert Witness Fees and Costs*

Were this Court writing on a clean slate, it would find that Drs. Kirkham, Rochman and Proctor's testimony and assistance were critical to the presentation of plaintiff's case and, accordingly, would allow reimbursement for their fees and costs. *See Ramos v. Lamm,* 713 F.2d at 559;

*Berry v. McLemore,* 670 F.2d 30, 34 (5th Cir.1982); *Jones v. Diamond,* 636 F.2d at 1382; *Miller v. Carson,* 628 F.2d at 349; *Rybicki v. State Board of Elections of Illinois,* 584 F.Supp. at 862; *Connor v. Winter,* 519 F.Supp. at 1345–46. However, the rule in this Circuit is otherwise as established in *Wheeler,* 585 F.2d at 624:

> We view differently, however, the fees and expenses of outside, non-legal consultants and experts. Their fees and expenses are traditionally not regarded as attorneys' fees, however essential their services may be to the successful preparation and trial of a complex case. We think that their fees and expenses may not be recoverable...

Accordingly, counsel's motion for $8,418.08 in expert witness fees and associated costs is DENIED.

### J. *Conclusion*

▮ Based on the aforesaid, counsel for plaintiff's motion for costs and litigation expenses is ALLOWED to the extent of $10,638.82.

## VII. INTEREST

28 U.S.C. § 1961 provides that interest, running from the date of entry of the judgment, "shall be allowed" on any "money judgment" recovered in a civil case in a federal district court. Most courts that have considered the question have ruled that § 1961 is applicable to § 1988 attorney's fees awards and pursuant thereto interest accrues as a matter of course from the date of entry of the judgment awarding fees. *E.g., R.W.T. v. Dalton,* 712 F.2d 1225, 1234–35 (8th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983); *Burke v. Guiney,* 700 F.2d 767, 773 (1st Cir.1983); *Spain v. Mountanos,* 690 F.2d 742, 747–48 (9th Cir.1982); *Morrow v. Finch,* 642 F.2d 823, 826 (5th Cir.1981); *Williamsburg,* 599 F.Supp. at 522–23; *Preston v. Thompson,* 565 F.Supp. 294, 297 (N.D.Ill.1983).

▮ Therefore, interest on this award is hereby GRANTED, pursuant to 28 U.S.C. § 1961, to be calculated from the date of entry of the judgment predicated upon this order.

## VII. ALLOCATION OF § 1988 AWARD AMONG DEFENDANTS

▮ Defendants may be held jointly and severally liable for an award of attorney's fees. *See, e.g., Riddell v. National Democratic Party,* 712 F.2d 165, 169 (5th Cir.1983); *Visser v. Magnarelli,* 542 F.Supp. 1331, 1339 (N.D.N.Y.1982); *Virginia Academy of Clinical Psychologists v. Blue Shield of Virginia,* 543 F.Supp. 126, 153 (E.D.Va.1982), *Vulcan Society v. Fire Department of White Plains,* 533 F.Supp. at 1060. However, in cases where the claims against defendants are separate and distinct or where the culpability is significantly unequal, apportionment of attorney's fees is appropriate. *Pawlak v. Greenawalt,* 713 F.2d 972, 979 (3d Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 707, 79 L.Ed.2d 172 (1984); *Decker v. United States Department of Labor,* 564 F.Supp. 1273, 1281–82 (E.D.Wisc.1983).

▮ In this case, though, the claims against all defendants, and the prosecution thereof, were unitary and defendants' involvement, as well as their defense, collective. Under these circumstances, the Court holds that liability for the entire award of attorney's fees must be shared jointly and severally. *See Pekarsky v. Ariyoshi,* 575 F.Supp. 673, 676–77 (D.Hawaii 1983).

## IX. SUMMARY AND ORDER OF AWARD OF FEES AND EXPENSES

The award in this case is predicated upon several components. First, the fees incurred were determined by multiplying a reasonable hourly rate ($100–125) by the number of hours reasonably expended in the litigation (1,964.5), which produced a basic fee of $224,758.50. Next, most of that amount was increased by a 1.5 contingency multiplier, with the adjusted figure totalling $325,303.75. Finally, costs and expenses in the amount of $10,638.82 were added to that figure resulting in a final award of $335,942.57.

Therefore, based on the reasoning set forth above, defendants are hereby OR-

DERED to pay plaintiff the sum of $335,-942.57 as reasonable attorney's fees and expenses for this action, plus interest thereon at the rate prescribed by 28 U.S.C. § 1961 from the date of entry of the judgment in this matter. Judgment shall enter forthwith and unless appealed, payment shall be made within thirty (30) days of the date of the entry of Judgment.[66]

SO ORDERED.

---

66. This assumes plaintiff's counsel accept the Court's award of fees and costs herein, rather than proceeding under option (a) of their contract with the plaintiff. If counsel choose to proceed under option (a), thereby recovering $450,000 from the plaintiff as fees, plaintiff shall be reimbursed by defendants the lodestar amount of $224,758.50, but the contingent multiplier will not be assessed. The rationale behind the different award under option (a) lies in the fact that when plaintiff's counsel proceed under option (a) to recover $450,000 from plaintiff, any risk undertaken in litigating this case is totally compensated. In the Court's view, plaintiff should not be rewarded for *counsel's* risk by reimbursement which includes a contingency multiplier.